## HEWITT v. SYSTEM FEDERATION NO. 152 OF RY. EMPLOYEES' DEPT. OF AMERICAN FEDERATION OF LABOR et al.

### No. 9244.

Circuit Court of Appeals, Seventh Circuit.

April 29, 1947.

Rehearing Denied June 2, 1947.

Daniel D. Lynch, of Hammond, Ind., and Willard H. McEwen, of Toledo, Ohio (Mulholland, Robie & McEwen, of Toledo, Ohio, of counsel), for appellants.

Alexander M. Campbell, U. S. Atty., and Gilmore S. Haynie, Asst. U. S. Atty., both of Fort Wayne, Ind., James E. Keating, Asst. U. S. Atty., of South Bend, Ind., John F. Sonnett, Asst. Atty. Gen., Searcy L. Johnson, Sp. Asst. to Atty. Gen., Philip W. Yager and Geoffrey N. Mann, Attys., Department of Justice, both of Washington, D. C., for appellee.

KERNER and MINTON, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

Hewitt, the appellee, on February 27, 1942, entered the employ of the Chicago, South Shore & South Bend Railroad Company as a car cleaner and continued to work in that classification until December, 1942, when he was inducted into the Army. He was honorably discharged on January 15, 1946, and thereafter, on January 23, 1946, the railroad restored him to his old position.

The railroad has in its employ persons classified as carman helpers, their work requiring a higher grade of technical ability than that of car cleaners. By a collective bargaining agreement executed on January 16, 1940, between the appellant union and the railroad, car cleaners were granted certain seniority rights among themselves, pursuant to which a seniority roster was prepared by the railroad listing its car cleaners in order of seniority. Hewitt's name is on the roster of car cleaners, with a seniority date of February 27, 1942. By the same agreement the carman helpers

also have seniority rights among themselves. The agreement, however, makes no provision whereby an employee may transfer from the car cleaners to the carman helpers on the basis of seniority rights. When vacancies have occurred among carman helpers for the filling of which no immediate qualified helpers were available, the railroad has sought out employees in lower paid job classifications and has offered them the opportunity to qualify as carman helpers. If they showed sufficient ability to perform the duties of helpers, they continued as such on a permanent basis.

During the period when Hewitt was in the Army, a number of car cleaners were promoted to positions as carman helpers. Up to April 18, 1943, all such promoted cleaners were senior to Hewitt on the cleaners' roster. On that date one Bohnstadt, a car cleaner junior to Hewitt, was so promoted. Between April 18, 1943, and January 29, 1946, eight other car cleaners were similarly promoted.

There was some dispute as to the method adopted by the railroad in determining which employees in the lower paid groups should be permitted to attempt to qualify as carman helpers. Hewitt claimed that such opportunity was always offered to car cleaners in the order of their car cleaners' seniority, and he contended that there existed, based on custom or practice, a seniority right to promotion to the position of carman helper. The railroad and the appellants denied the existence of any such practice.

The trial court, having tried the case without a jury, made separate findings of fact and entered a decree directing the railroad to place appellee's name on its seniority list of carman helpers as of April 18, 1943.

The appellants, System Federation No. 152, Railway Employees' Department of the American Federation of Labor and eight car cleaners, question appellee's right to be classified as a carman helper with a seniority date of April 18, 1943, and seek a reversal of the decree.

The appeal involves an interpretation of subdivision (b) and (c) of § 8 of the Selective Training and Service Act of 1940 as amended in 1944, 50 U.S.C.A.Appendix, § 308 (b, c). That Act provides that the honorably discharged service man, who, in order to perform training and service by induction into the armed forces of the United States, left a permanent position with a private employer, shall, if still qualified to perform the duties of the position, upon making the required application for re-employment after his relief from training and service, be restored to such position without loss of seniority.

In arguing for an affirmance, appellee makes the point that restoration is not limited to the status quo ante, and quotes the language used by the court in the case of Droste v. Nash-Kelvinator Corporation, D.C., 64 F.Supp. 716, 720, that the Act "gives him the full benefit of whatever added rights he might have acquired if he had remained in his position instead of being inducted into the service. If the seniority accumulated during the time he was in the service entitled him [to] a better job classification than he had at the time he entered the service, it is the duty of the employer to give him this better classification."

As an abstract proposition there can be no question as to the soundness of appellee's contention. The difficulty, however, with appellee's position is in its inapplicability to the instant case.

As we have already observed, § 8(c) of the Act provides that a veteran restored to his former position shall be so restored "without loss of seniority," and it is true that a veteran should not be penalized on his return by reason of his absence from his work. However, in the case of Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, the court made it clear that seniority provision did not contemplate a gain in seniority on the part of the veteran but only guaranteed him against loss of seniority by reason of his military service. In the course of its opinion, the court at page 285 of 328 U.S., at page 1111 of 66 S.Ct., said: "* * * these provisions guarantee the veteran against loss of position or loss of seniority by reason of his absence. He ac-

quires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence. But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed services." Thus we are told that the position to which the veteran is restored is the position which he left at the time of his induction, plus cumulated seniority, Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. 287, 66 S.Ct. 1112.

■ We agree with appellants that as a general proposition the attachment of rights to the seniority of employees is accomplished only by contract, that is to say, the sole source from which seniority rights have accrued is through some form of private contract. Ryan v. New York Cent. R., 267 Mich. 202, 255 N.W. 365; Polanskey v. Monongahela R., 342 Pa. 188, 19 A.2d 377. In the Act here involved, Congress recognized the existence of seniority systems and seniority rights within the frame work of the existing system and undertook to give the veteran protection, plus a guarantee against demotion. Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. 288, 66 S.Ct. 1112. In our case the car cleaners and the carman helpers, by their collective bargaining agreement, had separate seniority rights among themselves, without a provision whereby an employee classified as a car cleaner might transfer and be classified as a carman helper on the basis of seniority rights. In this state of the record, the trial court, having found as a fact that "At the time of petitioner's [appellee's] induction into the Armed Forces there was a contract of seniority within the classification of car cleaners as well as a contract of seniority within the classification of carmen helpers, but at no time has there been a contract of seniority governing promotion from the classification of car cleaner to the classification of carman helper," and "That petitioner, [appellee] at the time of his induction into the Armed Forces, had no right to promotion from the classification of car cleaners to

the classification of carman helpers by virtue of any custom or any written contract" was in error in directing the railroad to place appellee's name on its seniority list before the names of the eight individual appellants and assigning to appellee the seniority date of April 18, 1943.

The decree is reversed and the case is remanded to the District Court with instructions to dismiss the complaint.