## BOSTON & M. R. R. v. DAVID.
### No. 4307.

Circuit Court of Appeals, First Circuit.
May 5, 1948.

---

Carl C. Jones, of Concord, N. H. (Jonathan Piper and Sulloway, Piper, Jones, Hollis & Godfrey, all of Concord, N. H., on the brief), for appellant.

Robert D. Branch, Asst. U. S. Atty., of Concord, N. H. (Dennis E. Sullivan, U. S. Atty., of Concord, N. H., on the brief), for appellee.

H. Thornton Lorimer, of Concord, N. H., and Clarence M. Mulholland, Mulholland, Robie & McEwen, all of Toledo, Ohio, Willard H. McEwen and Richard R. Lyman, all of Toledo, Ohio, for Railway Employes' Department of American Federation of Labor, amicus curiae.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment ordering the respondent in an action brought under § 8(e) of the Selective Training and Service Act of 1940, 54 Stat. 891, 50 U.S.C.Appendix, § 308(e), to "reinstate the petitioner to the position of sheet metal worker helper, which was his permanent position when he left to enter service and training, or to a position of like seniority, status, and pay, and pay to the petitioner as interim damages the wages he would have earned as such, less what he has otherwise earned, from the date of his application to the date of his reinstatement, the petitioner to recover taxable costs."

It is assumed by both parties and the Amicus Curiae, and the ordering of interim damages confirms the assumption, that the effect of this judgment is to order the respondent to give the petitioner actual employment for wages in the specific capac-

ity named in its Concord, New Hampshire, shops. Since the District Court's memorandum opinion further confirms this assumption we shall treat the judgment appealed from as having the effect attributed to it.

The following basic facts which are not in dispute will serve to present the questions for consideration on this appeal.

The petitioner went to work for the respondent as a laborer in its Concord shops on October 2, 1940. In 1941, pursuant to the terms of a collective bargaining agreement entered into on April 1, 1947, between the respondent and the union which represented the various crafts and classes of its shop employees, the petitioner was advanced to the rating of sheet metal worker helper. On July 22, 1942, pursuant to the terms of a modification of the above collective bargaining agreement dated June 23, 1941, he was upgraded to sheet metal worker temporary, and on March 18, 1943, while holding this rating, he was inducted into the armed forces of the United States. It is now conceded that he was not qualified at the time of his induction, and at the time of trial still was not qualified, to do the work of a full fledged sheet metal worker; that he was temporarily rated as such under the modification of the basic collective bargaining agreement only for the purpose and as the means of giving him an increase in pay; and that during his military service he was retained on the respondent's roster of employees in his permanent classification of sheet metal worker helper on furlough or leave of absence in the armed service and given seniority in that classification dating from his first employment as a helper in 1941.

He was honorably discharged from the armed forces on December 16, 1945, and on January 28, 1946, he applied to the respondent for reinstatement to the same position he had held at the time he was inducted, that is, sheet metal worker temporary. There is no question but that the circumstances of the petitioner's military service and his discharge therefrom entitle him to the reemployment benefits of the Act, nor is there any question as to his qualifications to do the same work for the

respondent now that he was doing for it when he was inducted.

It is further conceded that at the time of the petitioner's application for reinstatement the respondent's operations in its Concord shops had reverted to normal from the expanded war-time conditions prevailing there when the petitioner was inducted; that in January 1946 it was not employing and since that time has not employed any sheet metal workers temporary or any sheet metal workers helpers at that place, or "point" as it is called in railroad parlance; and that at the time of the petitioner's application for reinstatement and ever since, all of the sheet metal work in the respondent's shops has been done by two employes, both of whom are mechanics, a term synonymous with journeymen in railroad parlance, one of them being a sheet metal worker of over twenty years standing and the other a freight car repair man of approximately the same seniority but who has been doing sheet metal work only since 1946. Under these circumstances, the petitioner having indicated upon applying for reinstatement that he would not accept employment at any other "point" than Concord, or any other employment there but the equivalent of the job he had when he was inducted, the respondent placed the petitioner on its roster as a sheet metal worker helper on furlough, giving him cumulated seniority, that is, the seniority he would have had if he had remained in its shops continuously. This position did not carry with it immediate employment for wages, but it did give the petitioner the right to be recalled to work in the order of his seniority among other helpers on the same roster whenever the respondent should require the services of sheet metal workers helpers at its Concord shops, and it also gave the petitioner, in the order of his seniority, the right to "bid off" other jobs for which he might be qualified.

The respondent contends that although it did not give the petitioner employment in the sense of work for a wage, it gave him a "position" in the sense of a place upon its roster with the same seniority he would have had if he had remained continuously

at work for the respondent, and that this is all the reemployment provisions of the Selective Training and Service Act require of it. The petitioner on the other hand contends that the respondent's action does not satisfy the statute. He says that he is entitled to be put to work at a wage, not merely carried on the respondent's roster in his permanent classification on furlough.

At the trial the court below, although it admitted oral evidence of the terms and conditions of the petitioner's employment as fixed by the basic collective bargaining agreement and the subsequent modification thereof, refused to admit the agreements themselves in evidence as exhibits. Then it found that the petitioner's permanent position with the respondent was that of sheet metal worker helper, and ordered his reempolyment by the respondent in that capacity; its ratio decidendi being that sheet metal work was still being done in the respondent's Concord shops, that although the respondent was employing full fledged mechanics to do that work, they were performing as part of their work the functions formerly performed for them by their helpers, and that one of the men so employed was junior to the petitioner on sheet metal work. Therefore the court below considered that the petitioner, since he had done sheet metal work before, even though only temporarily, "could be again assigned to sheet metal work or resume the work of helper."

■■ The respondent-appellant assigns error in three respects. It says (1) that the petitioner, because he applied for reinstatement in a position higher than the one to which he was entitled, i. e., sheet metal worker temporary, when his permanent classification was only sheet metal worker helper, failed to apply for reinstatement within the meaning of the Act within the 90 day period prescribed therefor by the December 8, 1944 amendment (58 Stat. 798) to subsection 8(b) of the Act; (2) that the collective bargaining agreements were improperly excluded; and (3) that on the facts disclosed the respondent had fully restored the petitioner in his former position in accordance with the rule of Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, by placing him on its roster as a sheet metal worker helper on furlough and giving him cumulated war-service seniority.

The respondent's first contention rests upon a harsh and overly-technical interpretation of the Act and cannot be sustained. Although it is true that the petitioner in applying for reemployment requested a higher position in the respondent's organization than the one he was entitled to, it does not appear that this misled the respondent in any way or prejudiced it in the defense of this action in any respect. Under these circumstances, our remark in Trusteed Funds, Inc. v. Dacey, 1 Cir., 160 F.2d 413, 422, that "We do not think a veteran necessarily loses all his rights under the Act merely because in applying for reempolyment he couples such application with a demand for something he erroneously believes to be his due," is fully applicable.

■ The respondent's contention that the collective bargaining agreements should have been admitted in evidence is undoubtedly correct. Indeed it is difficult to understand upon what theory they were excluded since they define the status, duties and rates of pay of each craft or class of employees in, and establish the seniority system for, the respondent's shops, and these are precisely the elements which have to be considered in order to determine the former "position" or the "position of like seniority, status, and pay" to which the Act entitles the petitioner to be restored. In fact the court below seems to have recognized that in cases of this sort an employee's rights must of necessity be determined by reference to his contract of employment, since it admitted oral evidence of the nature, conditions, duties and pay of the petitioner's job with the respondent. But if a contract of employment be in writing, as in the case at bar, the best evidence of its terms is of course the contract itself, and therefore the collective bargaining agreements should have been admitted in evidence. As the Su-

preme Court said in the Fishgold case at page 282 of 328 U.S., at page 1109 of 66 S.Ct.:

"A decision on the merits of petitioner's claim necessarily involved a reconciliation between the Act and the collective bargaining agreement or, if it appeared that they conflicted, an adjudication that one superseded the other. As we have noted, the District Court was of the view that the collective bargaining agreement was not inconsistent with the Act. But, however the result might be rationalized, *a decision for or against petitioner necessarily involved a construction of the collective bargaining agreement.* (Italics supplied.)

■■ And when the collective bargaining agreements excluded by the District Court are examined (they were marked for identification and so are before us) it is clear that the respondent restored the petitioner to the position, other than the temporary one, which he left to enter the military service, and gave him cumulated seniority in that position, which as we see it accorded the petitioner his full reemployment rights under the Act as interpreted in the Fishgold case.

The petitioner was not qualified for the status of mechanic. His permanent status was only that of helper, and under the agreements seniority does not cross craft lines but is in status. Furthermore under the agreements the petitioner as a helper did not have any right to be assigned to a mechanic's work when mechanics were available to do it, their superior status carrying with it superior rights to employment. Thus it was a misconception to conclude simply because sheet metal work was being done by mechanics in the respondent's shops, even by a mechanic junior to the petitioner on that work, that the petitioner was entitled to reemployment. He is entitled to be given employment on sheet metal work only when such work becomes available to one in his status and in his position in the framework of seniority in the respondent's shops. Only if it should appear that some employee with the same or inferior craft qualifications or status as the petitioner, and junior to him in seniority in that status, had been given

sheet metal work would the petitioner have cause to complain. Since it is conceded that the respondent has treated the petitioner just as it would have treated him had he not gone into the military service—that it has permitted him to step back on the seniority escalator at the precise point which he would have occupied upon it had he kept his position continuously during the war—the respondent has given the petitioner all he is entitled to under the Act. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284, 285, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A. L.R. 110. And the fact that the position given to the petitioner did not carry with it actual work for wages does not alter the situation. The only difference between the Fishgold case and the instant one is that in the former the petitioner was given work for a short time, or intermittently, whereas here the petitioner was never given any work at all, but this, being only a difference of degree, does not serve to distinguish the two cases. Indeed the Supreme Court covered the situation presented in the case at bar on pages 287 and 288 of 328 U.S., on page 1112 of 66 S.Ct. of its opinion in the Fishgold case when it said:

"The 'position' to which the veteran is restored is the 'position' which he left plus cumulated seniority. Certainly he would not have been discharged from such position and unable to get it back, if at the time of his induction into the armed services he had been laid off by operation of a seniority system. Plainly he still had his 'position' when he was inducted. And in the same sense he retains it though a layoff interrupts the continuity of work in the statutory period. Moreover, a veteran on his return is entitled to his old 'position' or its equivalent *even though at the time of his application the plant is closed down, say for retooling, and no work is available,* unless of course the private employer's 'circumstances have so changed as to make it impossible or unreasonable' to restore him. § 8(b) (B). *He is entitled to be recalled to work in accordance with his seniority. His 'position' exists though no work is then available. The slackening of work which causes him to be laid off by*

*operation of a seniority system is neither a removal or dismissal or discharge from the 'position' in any normal sense."* (Italics supplied.)

Since the petitioner upon applying for reemployment was promptly placed by the respondent on its roster of employees in his old permanent rating of sheet metal worker helper and given cumulated seniority therein, he was fully restored to his former "position" even though the operation of the seniority system in effect in the respondent's shops required that he be placed on furlough instead of put to work, and from this it follows that his action must fail.

The judgment of the District Court is vacated and the case is remanded to that court for the entry of a judgment dismissing the complaint.