CONNER et al. v. PENNSYLVANIA R.
CO. et al.
No. 10015.

United States Court of Appeals
District of Columbia Circuit.

Argued May 11, 1949.

Decided Aug. 1, 1949.

Rehearing Denied Oct. 5, 1949.

Mr. John W. Cragun, Washington, D. C., with whom Messrs. George R. Stewart, Riley A. Gwynn and Thomas Searing Jackson, Washington, D. C., were on the brief, for appellants.

Mr. R. N. Clattenburg, Philadelphia, Pa., of the Bar of the Commonwealth of Pennsylvania, pro hac vice, by special leave of Court, with whom Messrs. Hugh B. Cox and James G. Johnson, Jr., Washington, D. C., were on the brief, for appellee Pennsylvania Railroad Co.

Mr. Carl McFarland, Washington, D. C., with whom Messrs. Kenneth L. Kimble and Grant W. Kelleher, Washington, D. C., were on the brief, for appellees other than The Pennsylvania Railroad Co.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a civil action for declaratory judgment. Appellants sued in behalf of themselves and others similarly situated. They are employees of the appellee Railroad. The individual appellees are also employees of the Railroad. The problem concerns the rights of returned veterans under the Selective Training and Service Act of 1940.[1] It arises because of certain practices, covered by the agreement between the Railroad and its employees, affecting seniority rights.

The Railroad has two seniority lists, one for passenger trainmen and the other for freight trainmen. These lists are independent one of the other, except for transfers, which are provided for by the agreement. The pertinent provisions of the contract are:

"1–D–3. (a) On a seniority district where, on the effective date of this Agreement, it is the practice to employ trainmen for passenger, or freight or yard service exclusively, when additional passenger trainmen are needed the applications of freight and yard trainmen on the said seniority district shall be given consideration, after which the applications of switchtenders on that seniority district shall be considered.

"(b) When additional freight and yard trainmen are required on a seniority district where the practice referred to in paragraph (a) is in effect, the applications of passenger trainmen shall be given consideration, after which the applications of switchtenders on that seniority district shall be considered.

"3–F–1. In seniority districts where seniority is not interchangeable between switchtenders, yard brakemen, freight brakemen, passenger brakemen, baggagemen, or ticket collectors, an employe in one of the foregoing groups who accepts permanent transfer to one of the other three groups shall retain the seniority he earned in the group from which transferred and shall acquire seniority in the group to which transferred from the date of transfer."

These transfers give rise to the present litigation. All of the trainmen involved are veterans of World War II, and all are employed by the Railroad on the passenger roster under conditions which will be related.

To make clear the facts before us, we assume a simple illustration, using numbers and letters instead of names. Assume that the two seniority lists are as follows:

| Passenger | Freight |
| --- | --- |
| 1 | A |
| 2 | B |
| 3 | C |
| 4 | D |
| 5 | E |

1. 54 Stat. 885, as amended, 50 U.S.C.A.Appendix, § 301 et seq.

If the Railroad wishes to take on another passenger trainman, it must post a notice to that effect and give first consideration to men on the freight trainmen list who may wish to transfer. If a freight trainman then applies for transfer, and is deemed qualified, he takes his place at the bottom of the passenger trainmen list. If two or more freight trainmen apply, the applications must be considered in the order of the seniority of the applicants. If there are no applications for transfer, or if there are more places available than there are applications, the Railroad then employs men from the outside. In our example, let us assume that the Railroad desires three more passenger trainmen. When notice is given, freight trainmen C and D apply and are qualified. One more employee, Mr. 6, is secured from the outside. The lists would then appear:

| Passenger | Freight |
|-----------|---------|
| 1 | A |
| 2 | B |
| 3 | E |
| 4 | |
| 5 | |
| C | |
| D | |
| 6 | |

The contract provides for similar rights of transfer from the passenger list, if the Railroad wants more freight trainmen.

While employees of the Railroad were in military or naval service during the war, obviously they could not apply for transfer; they had no knowledge of the available possibilities. When these employees began to return, the Railroad determined, with the acquiescence of the Union which represented the trainmen, that the Selective Training and Service Act required that each such veteran be given the privilege of applying for transfer as of the date when he would have had that privilege had he not been in the service. It fixed the date of choice as the date when the man next junior on the freight list to the returned veteran did actually make a transfer. The result was that returned veterans who had been on the freight list, being given the privilege of applying for transfer, were placed on the passenger list well above those who had either transferred to that list or been directly employed on it while the veterans were away. Thus, in our above illustration, let us assume that C had been in the armed service when the opportunity came for him to transfer, and the Railroad had therefore transferred D and employed two men, Messrs. 6 and 7, from the outside. When C returned, he was given the privilege of transferring, and if he did so, he was placed just above D on the passenger seniority list. Obviously, the results might be that Mr. 7 would be laid off unless there was an increase in work, and if D happened to be the bottom man on the list at the time, he would be laid off; and, in any event, C would have seniority over D on the passenger list.

All of the appellants are employees who were originally on the freight list, transferred in due course to the passenger list, then went into the military service, and finally returned to the employ of the Railroad on the passenger list. The history and status of appellant Conner typifies those of appellants. He was employed as a freight trainman on September 18, 1940. He transferred to the passenger trainmen list January 12, 1941, entered military service August 27, 1941, and was honorably discharged from the service March 8, 1946. He was put back on the passenger list as though he had never left it, with seniority from January 12, 1941.

The individual appellees (defendants below) also are employees who were originally on the freight list. While on that list they entered military service, served, were honorably discharged, and returned to railroad employ. Thereupon they were given opportunity to transfer to the passenger list and elected to do so. They were placed on that list just ahead of the men who had been their juniors on the freight list and who had transferred during the intervening period of appellees' military service. The result is that the appellee trainmen, who had been on the freight list prior to military service, were placed, in many instances, on the passenger list ahead of other veterans who had been on the passenger list before going off to war.

The history and status of appellee E. R. Briscoe typifies those of the appellee trainmen. He entered the freight service on October 2, 1940, went into military service October 18, 1940, and returned to the Railroad October 19, 1944. He promptly elected to transfer and was transferred on October 20, 1944. Thereupon he was placed on the passenger list just ahead of W. A. Cannon, who had been the first freight trainman junior to Briscoe to transfer to passenger service after Briscoe went into the army. Cannon had transferred December 17, 1940. Briscoe was treated as though he had transferred on that same day. This placement of Briscoe put him on the passenger list well ahead of appellant Conner and others similarly situated; e. g., Briscoe was No. 33 and Conner No. 61 on the January 1, 1947, passenger list.

Conner's complaints are two. He complains that though he had been on the passenger list since January 12, 1941, and was entitled under the law and the contract to retain his seniority, and though Briscoe had not actually come to that service or been placed on that list until October, 1944, Briscoe was placed many numbers ahead of him. In the alternative, Conner complains that if Briscoe is properly given the transfer and placement actually given him, he (Conner) must have the same privilege of transfer to the freight list and the same sort of placement there next above the man who first came to that list after he (Conner) went off to war.

The actual incidents about which the case revolves are in dozens of names and in many varieties of circumstances, neither so simple nor so few as those indicated in our illustration and example. Nevertheless, these will serve as a basis for stating the questions raised by the suit.

■■■ The complaint stated two alternative causes of action. The question in the first is whether the practice of affording a returned veteran the privilege of applying for transfer as of the date when he would have had that privilege had he not been in the service, is required by the Selective Training and Service Act. The question in the second is whether, if the privilege is accorded those on the freight list, it must not also be accorded those on the passenger list.

Section 8(c) of the Selective Training and Service Act of 1940[2] provides: "Any person who is restored to a position * * * shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, * * *."

The effect of that provision of the Act is that an employee who enters the military service must be given, upon his return, the same seniority which he would have had had he not been in the service. This is the doctrine of Fishgold v. Sullivan Corp.[3] and Aeronautical Industrial District Lodge v. Campbell.[4] These rights include whatever rights to promotion the employee would have had if he had not been in the service.[5] We think the same doctrine applies to the seniority problems involved in the present case. When additional passenger trainmen were needed, the established practice was to transfer to passenger service qualified trainmen in freight service who made application for such transfer and who possessed the highest seniority in freight service. It is indicated by all parties that this practice was in effect an opportunity to transfer by election of the employee, the requirement of qualification being usually, if not universally, met by employees already in good standing in the

[2] 54 Stat. 890, as amended, 56 Stat. 724 (1942), 50 U.S.C.A.Appendix, § 308(c).

[3] 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110.

[4] 1949, 337 U.S. 521, 69 S.Ct. 1287.

[5] Morris v. Chesapeake & Ohio Ry. Co., 7 Cir., 1948, 171 F.2d 579, certiorari denied, 1949, 336 U.S. 967, 69 S.Ct. 938, 93 L.Ed. ——; Freeman v. Gateway Baking Co., D.C.W.D.Ark., 1946, 68 F. Supp. 383.

freight service. We therefore conclude that when the employee returned from the service, he should have been accorded the privilege of transfer which he would have had had he not been absent in the service. This is to approve the practice of the Railroad in so far as the treatment of men on the freight list is concerned.

The cases cited by appellants on this proposition do not support their contention. In Hewitt v. System Federation No. 152, Etc.,[6] the court found that at the time of the petitioner's induction into the armed forces he had no right to promotion from one job classification to another by custom or otherwise. Raulins v. Memphis Union Station Co.[7] and Boston & M. R. R. v. David[8] are to the same effect. In Spearmon v. Thompson,[9] the court merely held that veterans are entitled to be restored to the positions they held before going into the service plus accumulated seniority. None of those cases dealt with a contractual right to transfer from one roster to another on the basis of seniority.

Appellants argue that because some of the appellee trainmen failed to transfer to the passenger roster before going into the armed services (though the opportunity was presented to them), the right to transfer became valuable only when they returned and were allowed to transfer with antedated seniority. But the contract does not provide that once an employee passes up such an opportunity his election forever precludes him from transfer. The reason for antedating appellees' seniority was that they were not present when the opportunities arose. To allow these men to transfer but to place them at the bottom of the list would be to penalize them by reason of their being in the service. The Selective Training and Service Act was designed to prevent that type of treatment.

Appellants also suggest that the retention of the appellee trainmen on the passenger roster at all is improper. They point out that at the time the appellees actually transferred there were no vacancies in the passenger service. This suggestion ignores the facts that there were vacancies while these men were in the service and that they could not exercise the right of transfer due to such service. The Supreme Court pointed out in Fishgold v. Sullivan Corp.,. supra,[10] that "He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job."

Finally, it is contended that the agreement between the Railroad and the Union is not binding on the appellants. But, since the Act required that the appellee trainmen must have been offered any opportunity to transfer which they would have had had they not been absent in the service, it is unnecessary to consider this point.

In their alternative claim for relief, the appellants asked that the Railroad be required to tender to them an opportunity to transfer to the freight roster with seniority as of dates which would place them ahead of their respective immediate juniors who transferred, or ahead of freight employees who were employed from the outside after appellants went off to war. The Selective Training and Service Act makes no differentiation between people or circumstances in the particulars in which the persons and circumstances in this case differ. We therefore hold that exactly the same rule which applies to returning veterans who were on the freight list at the time of their entry into military service, applies to such veterans who were on the passenger list at that time.

Generally speaking, there was no custom of transferring from passenger to freight service before the war, passenger service being generally preferred by the men; there were such transfers occasionally but not customarily. This fact led the District

[6] 7 Cir., 1947, 161 F.2d 545.

[7] 6 Cir., 1948, 168 F.2d 466.

[8] 1 Cir., 1948, 167 F.2d 722.

[9] 8 Cir., 1948, 167 F.2d 626, certiorari denied, 1948, 335 U.S. 822, 886, 69 S.Ct. 44, 238, 93 L.Ed. ——.

[10] 328 U.S. at page 284, 66 S.Ct. at page 1111, 90 L.Ed. 1230, 167 A.L.R. 110.

Court to conclude that there were no "established rules and practices" in that respect within the meaning of the Selective Training and Service Act. But there was clearly an established rule and practice of affording the passenger trainmen *opportunities* to transfer when freight trainmen were needed. That was required by the contract. And it is the opportunity which appellants claim as their right. They do not say that there was a rule and practice that they be transferred. They say that the rule and practice was that they be given the opportunity to transfer. We think that the District Court was in error in its conclusion upon this part of the case.

■ Appellee trainmen contend that even assuming appellants had the right to elect to transfer to freight service, they have lost that right by failing to apply for employment on the freight roster within the ninety-day requirement of Section 8(b) of the Act.[11] But it is not reemployment which appellants seek, and they did contest their seniority status on the passenger list. There is no showing that appellants' failure to seek the proper relief resulted in any injury to the Railroad.[12]

We realize that our conclusion upon the alternative claim may cause extensive readjustments of the seniority rosters if many veterans on the passenger list decide to transfer to the freight list under these conditions. But we think that the Act permits no other conclusion.

■ It is also contended that there is a lack of indispensable parties, in that the trainmen who are on the freight roster are not named as defendants. A similar contention was rejected in United States ex rel. Deavers v. Missouri K. & T. R. Co.[13] Further, the Union which represents the employees of the Railroad was made a party to this action.

■ Appellants also seek damages and an accounting. But there is nothing to indicate a demand for transfer by appellants or a refusal by the Railroad to do so. It is true that the Railroad offered the appellee trainmen opportunities to transfer to the passenger list but did not afford appellants similar opportunities to transfer to the freight service. But the Railroad's action in that respect was taken after an application had been made by a returning freight trainman. There is no indication that any of the appellants requested a transfer under any circumstances. It would be a harsh rule that would permit a serviceman to return to his job, keep silent for an extended period of time, even though he was fully aware of all the circumstances, and then claim damages from his employer for failure to offer him a right to a different job for which he never applied. Appellants have not shown a cause of action for damages.

The judgment of the District Court is affirmed in part and reversed in part and the case remanded for further proceedings in accordance with this opinion.

Affirmed in part and reversed and remanded in part.

### On Petition for Rehearing

PER CURIAM.

■ Appellants say that nowhere in the proceedings prior to the opinion of this court was the right to damages raised or argued. The complaint asserted a claim alternatively in the event that the court should adjudge lawful the action of the Railroad in transferring the defendants from the freight list to the passenger list. The District Court and this court did so adjudge. The alternative claim was in two parts, (1) an asserted right of appellants to an opportunity to transfer to the freight list and (2) damages, the amount of which was to be shown by an accounting. This court passed upon the alternative claim, approving it in one part and denying it in the other.

Appellants' other present points were fully discussesd in the original briefs and argument.

The petition for rehearing is denied.

---

[11] 54 Stat. 890, as amended, 58 Stat. 798 (1944), 50 U.S.C.A.Appendix, § 308 (b).

[12] Cf. Boston & M. R. R. v. David, supra.

[13] 5 Cir., 1949, 171 F.2d 961.