## LITTLE v. PENNSYLVANIA R. CO.

### Civ. A. No. 5192.

United States District Court
D. Maryland, Civil Division.

Feb. 9, 1951.

Bernard J. Flynn, U.S. Atty., Thomas G. Gray, Asst. U.S. Atty., Baltimore, Md., for petitioner.

Hall Hammond, Clayton W. Daneker, Baltimore, Md., for respondent.

CHESNUT, District Judge.

In this case a petition has been filed by Harry H. Little under the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 308(b) and (c), to enforce alleged "seniority rights" on re-employment by The Pennsylvania Railroad Company, after being honorably discharged from the military service. The answer of the defendant denies that the petitioner was entitled to the seniority rights asserted. After hearing the evidence in the case and the arguments of counsel, I have concluded that the petition must be dismissed for two reasons: (1) Because under the established rules and practice relating to his employment the seniorty rights which he asserts did not exist, and (2) because his rights thereto, if they had existed, were not asserted in accordance with such rules and practices. From the evidence in the case I find that the material facts relating to the first point are these.

The Pennsylvania Railroad Company operates many thousands of miles of railroad and for such operation is divided into many Divisions and has in its service many thousand employees. In 1936 the plaintiff, then about 18 years of age, after completing three years of high school work in Baltimore, was first employed by the Railroad as a helper in the Maintenance of Way and Signal Department of the Philadelphia-Washington Division of the Rail-

road where the traction equipment for its trains is very high voltage electric power. On September 17, 1937 he was an "electrician's helper" with rate of pay at 62¢ per hour, engaged in the electrical traction department. Except for temporary interruption in employment due to reduction in force or while on furlough, he retained this position at the same rate of pay until on April 16, 1941 he was inducted into the Service under the Act. Within due time after honorable discharge from the military service he was re-employed on January 2, 1946 by the Railroad as an electrician's helper, the same position he had before going into the military service, and was given the same seniority status as an electrician's helper which he had previously held, and was paid at the then current rate of wages of about $1.00 per hour. He says that on January 4, 1946 he wrote a letter to P. J. Irvin, Superintendent of his Telegraphic and Signal Department, Baltimore, Maryland, stating in effect that he was entitled to be promoted to be an electrician, a class of work higher than that of electrician helper, because he understood that while he was in the Service one or more electrician's helpers, junior to him on the roster of electrician's helpers, had been promoted to be electricians. The defendant denied having received this letter. It will be later referred to in connection with the second point above mentioned. Receiving no reply to the letter the petitioner did not make any further inquiry with regard to whether his letter had been received and did not go to see Mr. Irvin or otherwise communicate with any of the railroad officials. He explained the failure to follow up the letter by saying that a day or two after he wrote it he had a talk with Mr. Menig, the local "chairman" of the Union of which he was a member, who informed him that his proper course to pursue in seeking promotion from the class of electrician's helper to electrician, was to wait until there was an advertised vacancy in the electricians' class and then to put in his written application for promotion. Mr. Menig as a witness stated that his conversation with Little upon the subject did not occur at the time stated and not until about

ten months later. But despite the petitioner's statement as to the time of the conversation with Menig he did not make an application for promotion to a position of electrician until shortly before November 4, 1946 and after Menig had called his attention to the fact that there was a vacancy in the position of electrician at Philadelphia.

In the meantime the Railroad had posted notices of nine vacancies in the position of electrician to be appointed for service on the Philadelphia-Baltimore-Washington Division, some at Baltimore and some at Perryville, Maryland. The petitioner made no application for promotion to any of these vacancies. But shortly before November he was advised by Menig to apply for the position of electrician in Philadelphia. He was reluctant to do so because as he lived in Baltimore he would find it inconvenient to report for duty in Philadelphia by 8 A.M. However, Menig by personal interview with the person in charge at the Philadelphia station where Little would be employed, obtained permission for him to report shortly after 8 A.M. by convenient train connections from Baltimore. Little then did make the application and upon being found qualified after interview or examination, was promoted to the class of electrician with an advancement in the rate of pay. He continued to hold that position for about a month when by a required reduction in the force affecting electricians, he was displaced by an employee having higher seniority status on the electricians' roster, and was returned to the position of electrician's helper which position he continued to fill until on June 14, 1948 he was again employed as an electrician, and from then until before filing this suit he continued to be employed as an electrician or an electrician's helper and is now so employed as an electrician with last current rate of pay of $1.82 per hour. After he had temporarily been displaced as an electrician by another employee having higher seniority listing on the electricians' roster, he wrote another letter to Mr. Irvin, Supervisor at Baltimore, dated January 8, 1947, in which he complained that he had been displaced as an

electrician by electricians who had been advanced from electrician's helper to electrician while he was in the Army. In the second letter he made no reference to his former letter to Mr. Irvin. Mr. Irvin received and replied to this second letter stating that Little's complaint as to his standing on the electricians' roster was not received within the time required by the rules relating thereto and therefore he, Irvin, could "not take any action at this time". It appears that thereafter nothing transpired between Little and any of the railroad officials but apparently Little took the matter of ascertaining his rights up with the Veteran's Administration and the present suit was filed November 2, 1950.

Section 308(b) and (c) provide that the employer shall restore the veteran to the position which he held before entering the military service "or to a position of like seniority, status, and pay"; and that the veteran "shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted". The Act does not define what constitutes seniority rights. To determine what they are it is necessary to ascertain from the evidence what were the rules and practices of the employer affecting the petitioner. In the case of an employer with many thousands of employees as in the instant case, these rules and practices are at the present time nearly always to be found in the collective bargaining agreement between the employer and its employees. And this is particularly true with regard to the employees of a railroad. In the instant case the controlling agreement was that made in 1940 (Plaintiff's Ex. A in this case) consisting of a printed book of rules of 35 pages made between the Pennsylvania Railroad Company and the Pennsylvania Federation of the Brotherhood of Maintenance and Way employees. See Aeronautical Industrial District Lodge v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513. This rule book containing the agreement with some amendments, was again published in December 1945, without materially important changes affecting this case. Without undertaking to review the rules and practice thereunder, they may be summarized, so far as here important, as follows:

1. Seniority means the date on which active service and pay of an employee began. The holder of the earliest date on the roster of employees holding a particular position has seniority over all later employees. Senior employees in one class have preference in applying for promotion to a higher class; but it is to be noted that promotions from a lower to a higher class are not automatic and based on seniority alone but are conditioned upon demonstration of qualifications with examination of such kind as is required by the railroad officials.

2. In the Maintenance and Way Department, where the petitioner was employed and was a member of the Union and a party to the rules agreement, there were various positions in ascending classes or ranks, as for instance, helpers, electricians' helpers, electrician, gang foreman, assistant power director, power director and still higher classes. Seniority is not interchangeable between different positions; that is to say, there is one roster of employees for the position of electrician's helper and another separate one for electricians. The seniority status of an electrician's helper is determined by his date of entering service on his particular roster; and when he becomes an electrician he takes a new seniority date on that list as of the date when he was assigned to the higher position. And so with regard to the other higher positions. Seniority also operates in this way. When a reduction of force in employees is necessary affecting a particular position as that of electrician, the junior employees must first be laid off and the others retain their jobs in order of seniority. When an electrician is thus displaced from the electricians' roster he reverts to the position of electrician's helper and retains his status of seniority on that particular roster and is entitled to displace another junior to him on that list. But he must actually and physically exercise the

634

seniority rights in that respect by claiming the particular job of the person whom he is entitled to displace promptly and within five days.

■ The Act provides that during his period of military service the employee is to be treated as if he were on furlough or leave of absence. With respect to seniority rights as affected by leave of absence, the rules of the employer in this case provided that "An employee given leave of absence will retain and accumulate seniority during the period of such leave of absence", and "An employee returning to duty after leave of absence * * * shall within five days, after reporting as ready for duty, return to his former position or exercise seniority to any position advertised during his absence." But when an employee returning from leave of absence desires to exercise seniority rights with respect to assignment to the position of a higher class (as for instance from electrician's helper to an electrician) he is subject to the further rule that "In the assignment of employes to positions under this Agreement, qualifications being sufficient, seniority shall govern. In making application for an advertised position or vacancy, or in the exercise of seniority, an employe will be permitted, on request, or may be required, to give a reasonable, practical demonstration of his qualifications to perform the duties of the position." Promotion from a lower class to a higher class is not automatic by reason of seniority in the lower class but is subject to demonstrated qualifications and capacity for the higher position. This requirement is obviously not a mere formality but of great importance in the operation of the high voltage electrical railroad equipment which so importantly affects the safety of both passengers and employees and in the practical operation of which the railroad as a common carrier is held to the highest degree of care. The position taken by the petitioner in this case is that at once upon his re-employment he was entitled to be made an electrician and given a seniority status on the electricians' roster ahead of any employee who, during his absence, being junior to him on the electrician's

helpers roster, was made an electrician. He ignores the rule which requires that before being assigned to his higher position it was necessary for him to demonstrate his qualifications therefor in the exercise of what he thought was his seniority rights. But he was frank enough as a witness to say that he was not sure immediately on re-employment, after five years absence from the electrical work as an electrician's helper, that he was then immediately qualified to work as an electrician in this important branch of the railroad's operations, although he said he thought he would have been able to qualify himself therefor within thirty days thereafter. Precisely what he now asks for is that by order of court he should be given a seniority status on the electricians' roster ahead of any junior employee in the electrician's helper class who was promoted to be an electrician during the petitioner's absence in the Army. In taking this position he seems to be asserting a right to "super seniority" not afforded by the rules and practice of the employer. While the Act is to be liberally construed and applied in favor of returning veterans to enforce their rights to all existing seniority despite their absence in the Army, it was not the purpose of the Act to increase those rights thus creating in the interest of the veteran a super seniority. Fishgold v. Sullivan Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; See also Trailmobile v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328, and Oakley v. Louisville & N. R. R. Co., 338 U.S. 278, 70 S.Ct. 119. The important point to note is that promotion merely from seniority from one class to another was not automatic. Indeed the index to the rules does not include the word "promotion". Under the rules the employer was at liberty if in need of an electrician during the war not found qualified in the lower classes, to employ nonmembers of the Union if found qualified for the position. The petitioner in this case does not assert that he would be entitled to seniority on the electricians' roster ahead of such outside employees, if any.

■ The facts of the instant case are practically identical (with the exception of names and dates) with the case of Raulins

v. Memphis Union Station Co., 6 Cir., 168 F.2d 466. That case dealt also with a veteran who had been an electrician's helper and demanded by his petition the right to be made an electrician upon his re-employment. The rules and practices of the employer were substantially the same as those in the instant case. It was held that the veteran did not have the seniority rights claimed by him under the rules. I find myself in accord with the reasoning and conclusion of that case. Like reasoning and conclusion with respect to the positions of car cleaners and carman helpers under similar railroad rules is found in the case of Hewitt v. System Federation No. 152 of Railway Employees, 7 Cir., 161 F. 2d 545. And similar is the reasoning of District Judge Barksdale in Huffman v. Norfolk & Western Ry. Co., D.C.W.D. Va., 71 F.Supp. 564. See also Boston & Maine R. R. v. David, 1 Cir., 167 F.2d 722. The cases relied upon by counsel for the petitioner are distinguishable on the facts. Conner v. Pennsylvania R. Co., D.C. Cir., 177 F.2d 854; Morris v. Chesapeake & O. Ry. Co., 7 Cir., 171 F.2d 579. In Oakley v. Louisville & N. R. Co., 338 U.S. 278, at page 281, 70 S.Ct. 119, at page 121, it is to be noted that the petition or complaint was dismissed on motion without trial on the facts and it will be noted that the complaint in one of the cases alleged that if the petitioner had not been in the Army "he would have been promoted to helper apprentice and would have been given the pay as such". See also Annotation re Employment of Veterans, 167 A.L.R. 124.

■ Even if the rules could be interpreted to have given the petitioner the seniority rights which he asserts, I find from the evidence that he did not assert such rights in accordance with the rules. As we have seen, the rule with respect to employees on leave of absence expressly required that any exercise of seniority rights on return must be taken "within five days, after reporting as ready for duty". And other rules provide that this right must be exercised by "physically" displacing the person over whom he had seniority rights which, as explained in the testimony of Menig, the local chairman of the Union (whose evident intimate familiarity with the operation of the rules and the practices thereunder was clearly apparent), meant that the employee must present himself on the job and definitely claim the job to which he was entitled by displacing a junior employee. From the facts already stated it is evident that the petitioner in this case did not comply with this rule.

With respect to the letter which he says that he wrote within two days after his return to Mr. Irvin, I conclude on a preponderance of the evidence that it was not actually received by Mr. Irvin or was not received by the employer. There was satisfactory evidence that a letter of this kind from an employee would have been retained and should have been found in the files of the Company. Mr. Irvin, the addressee, had died in the latter part of 1947, about three years before the institution of this suit. So far as I recall the evidence, no reference to this letter had been made to other officials of the employer, the Pennsylvania Railroad Company, until after or shortly before the institution of this suit. There was further evidence that by the established custom of the business such a letter, if received, would have been answered and the employee probably invited to a personal conference. The letter written by the petitioner about a year later on a very similar subject matter made no reference to the former letter. The petitioner not receiving a reply to the letter did nothing further to inquire about its receipt, but, as he says, relied on the local chairman who by the rules was made his representative in negotiations with the Railroad, to the effect that he should seek to exercise his rights by applying for the next advertised vacancy in the electrician class. And despite this, petitioner made no such application although some nine vacancies did occur and were fully advertised between January and November 1946. And when he again complained in January 1947 of his displacement by a senior electrician on the electricians' roster, by reason of a necessary reduction in the force of electricians, as he was advised by Mr. Irvin's reply, he again failed to appeal to his local chairman or otherwise take any action

about the matter for more than three years until this suit was filed.

It may also be noted that on January 24, 1945 an amendment was made to the agreement between the Railroad and the Union of which the petitioner was a member, with special reference to the exercise of seniority rights by returning veterans. It provided in paragraph 2 that the returning veteran "be restored to such position with this Company (including rights to promotion) to which his accumulated seniority entitles him, all in accordance with the then existing rules of the Scheduled Agreement, the same as if he had remained in the service (such rights to be exercised by the individual within five days from his reporting for duty)". Some suggestion was made by counsel for the petitioner that the rule was unreasonable as applied to the returning veteran in that it gave him only five days to exercise his seniority rights. But in this respect the rule is the same in substance as the agreement of 1940 with respect to employees returning from a leave of absence and as such would seem to be clearly a nondiscriminatory amendment of the nature upheld by the Supreme Court in Aeronautical Industrial District Lodge v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513.

There was some evidence to the effect that in the practice under the rules if a reemployed veteran promptly within the five days allowed by the rules applied for a higher position than he held when he left to go into the Service, and *if he was found qualified for that service* and actually assigned to it, he would be given a seniority date ahead of that of his juniors on the roster of his former position if any of them had been appointed to the higher roster during the veteran's absence in the Army. But that is not the situation which we have here because the petitioner here did not make the application within five days and more importantly did not offer to demonstrate his qualifications for the higher position. As has been pointed out, the rules do not provide for promotion merely on the basis of seniority and for very important reasons promotions from electrician's helper to electrician should not be

made and by the rules are not made, without the applicant for the promotion demonstrating his capacity for the higher work.

For these reasons I conclude that the petition must be dismissed without costs. Counsel may present the appropriate order in due course.