Earnest C. POORE

v.

LOUISVILLE AND NASHVILLE RAIL-
ROAD COMPANY.
No. 16033.

United States Court of Appeals
Fifth Circuit.

July 20, 1956.

R. Macey Taylor, Birmingham, Ala.,
for appellant.

White E. Gibson, Birmingham, Ala.,
Gibson & Gibson, Birmingham, Ala.,
for appellee.

Before HUTCHESON, Chief Judge,
and RIVES and BROWN, Circuit
Judges.

JOHN R. BROWN, Circuit Judge.

Starting with the asserted premise that Oakley v. Louisville & N. Railroad Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87, and Diehl v. Lehigh Valley R. Co., 348 U.S. 960, 75 S.Ct. 521, 99 L. Ed. 749, reversing, 3 Cir., 211 F.2d 95, requires that time spent in military service shall continue to count, " * * * as though he had remained continuously in his civilian employment * * * ", Oakley, supra, 338 U.S. at page 284, 70 S.Ct. at page 122, toward seniority during the entire time of subsequent re-employment, Poore sought, but was denied, both money judgment and declaration that, by adding civilian and military time,[1] he had exceeded 1040 days as an Electrician Helper and was therefore entitled under the System Federation collective bargaining contracts and supplemental memoranda to be "promoted" or "advanced" to the status (and seniority) of Electrician.

For some time he had been performing work as an Electrician with Electrician's pay. This he did as an "upgraded" Electrician Helper with no seniority as Electrician, but retaining always his seniority as Electrician Helper. Since the Railroad (and System Federation) considered him to have the status and seniority as Electrician Helper only, he was on July 16, 1954 laid off from his job as Electrician (upgrade) as a result of necessary reduction of

1. Significant data as to Poore:

| | |
|---|---|
| Date of seniority as Electrician Helper: | June 28, 1948 |
| Entry on military service: | January 7, 1951 |
| Reinstatement after military service: | February 25, 1952 |
| Laid off reduction in force: | July 16, 1954 |
| Formal demand made on railroad for Electrician status: | February 9, 1955 |

Agreed Actual Work Time

| | | |
|---|---|---|
| **Pre-military** | | |
| (June 28, 1948 to January 7, 1951) | | |
| Electrician Helper | 314 | |
| Crane Operator | 35 | |
| Electrician (upgraded) | 10 | 359 |
| **Post-military** | | |
| (February 25, 1952 to July 16, 1954) | | |
| Electrician Helper | 128 | |
| Electrician (upgraded) | 481 | 609 |
| Total Actual Work | | 968 |
| If Military Time Added: | | |
| January 7, 1951 to February 24, 1952 (Basis 260 work days per year) | 276 | 276 |
| Total Actual and Military | | 1244 |
| 1,040 day period would expire: June 21, 1953 | | |
| Pre-military | 359 | |
| Military | 276 | |
| Post-military (Feb. 25, 1952 to June 21, 1953) | 405 | |
| | 1040 | |

forces on that date. Poore, however, reduces his complaint, in effect, to the specific charge that retention of R. H. Newton,[2] then rated as an Electrician but actually junior to him on the roster of Electrician Helper at the time of his entry on military service, was in violation of the Act, 50 U.S.C.A.Appendix, § 459. Poore pitches the battle entirely on the comparative right of himself and Newton, for neither here nor below did he make the charge that he was entitled to claim the job over other Electricians[3] junior to Newton.

Since the returning veteran, " * * * assumes, upon his reemployment, the seniority he would have had if he had remained in his civilian employment. His seniority status secured by this statutory wording continues beyond the first year of his reemployment, subject to the advantages and limitations applicable to the other employees", Oakley v. Louisville & N. Railroad Co., 338 U.S. 278, at page 284, 70 S.Ct. 119, at page 122, decision here turns on the terms of the agreement between the Railroad and its employees regulating seniority, advancement and similar rights. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328; Aeronautical Industrial Dist. Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513. And this inquiry is further reduced to a simple issue: is an Electrician Helper entitled automatically as of right to the status of Electrician on the mere elapse of the specified (1040 days) time? We think the answer is "No", and on that Poore fails in his claim.

■ We subscribe fully to the District Court's findings and conclusions that neither the written agreements nor the implied agreements from the usual custom and practice of the parties gave any such automatic promotion. The basic contract actually spoke only in terms of the qualification[4] of those who *might* be selected without specifying the procedure of selection. There were four distinct classifications[5] of electri-

2. The Trial Court found, with ample record support, that pending the opening of an actual contemplated specific Electrician's vacancy for which he was hired, Newton, a qualified experienced electrician then working for an industrial company, was placed on the Electrician's Helper Roster with seniority as of January 8, 1951. Upon the Electrician's vacancy opening up March 26, 1951, he was classed as such with Electrician's seniority as of that date. He resigned as an Electrician Helper simultaneously and forfeited that seniority.

3. Seniority on The Electrician's Roster as of July 16, 1954 was:

| Rank in Seniority | Name | Date of Seniority |
| --- | --- | --- |
| 11. | R. H. Newton | 3–26–51 |
| 12. | W. L. Scott | 11–24–51 |
| 13. | J. W. Doss | 1–28–54 |
| 14. | L. C. Hammock | 2– 2–54 |
| 15. | F. O. Newton | 4–12–54 |
| 16. | J. F. Zuiderhoek | 5–17–54 |
| 17. | H. E. Kelly | 5–18–54 |

If Poore's theory is correct and applied logically, he would have Electrician's seniority as of June 21, 1953 (note 1, supra) and have, at least, Rank No. 13.

4. The agreement between the Railroad and its employees covering "Rules and Working Conditions (2nd Edition effective September 1, 1943, with revisions to February 1, 1952)
"Provided:
 "Electricians Special Rules
"Rule 131. Qualifications. Any man who has served an apprenticeship or who has had 4 years practical experience in electrical work and is competent to execute same to a successful conclusion within a reasonable time will be rated as an electrical worker * * *."

5. Electrician: see Rule 131, note 4, supra. Electrician Apprentice: "Rule 133. Electrician Apprentices include regular and helper apprentices in connection

cal workers in the descending hierarchy of Electrician, Apprentice, Helper Apprentice, and Electrician Helper. The four years' practical experience (Rule 131) was presumably intended to parallel generally the training program experience of Apprentices.[6]

Nor did the 1946 and 1947 Memorandum of Undertaking provide any such guaranty. These were intended to cover the employment on a temporary basis of Apprentices, Helper Apprentices and Electrician Helpers as persons not having craft (mechanics) status during the periods of labor shortages in the existing national emergencies. With meticulous care these agreements made plain that job openings were available in strict accord with the hierarchy and that as "mechanics" (craft status) became available or reductions in force took place, the "upgraded" employees would be laid off in inverse order, and, to preserve this industrial stratification, the original status of upgraded employees was continued with seniority accumulating in that status only.[7]

A consideration of both reveals the sharp distinction between Apprentices (including Helper Apprentices) and

with the work as defined in Rule 132 (a)."

Helper Apprentice: Rule 135. [Up to 50% of authorized apprentices may comprise Electrician Helpers having two years or more experience and certain age requirements.]

Electrician Helper: "Rule 134. Employes regularly assigned as Helpers to assist electrical workers and apprentices. * * *"

6. "Rule 136—Schedule for Apprentices—Electricians. Apprentices shall be given an opportunity of learning all branches of the trade. The various classes of work are designed as a guide and will be followed as closely as the conditions will permit:

260 days—Inside wiring and electrical repairing.
130 days—Outside line work.
130 days—Locomotive headlight work.
130 days—Car lighting department.
130 days—Armature winding.
260 days—General electrical work.
Helper apprentices [see note 5, supra] to serve 130 days on each classification of regular apprentices schedule."

This program totals 1040 days, the equivalent of 4 years' working time (52 weeks X 5 days).

7. Memorandum effective May 1, 1947:

"1. When new jobs or permanent vacancies occur * * * and no mechanics bid on the position or are available for service, it will be permissible to advance apprentices or helpers in the order outlined below. The men advanced will not lose their seniority as apprentices or helpers nor will they accumulate seniority as mechanics. * * *

* * * * *

[The order of upgrading then set forth in paragraphs 2, 3 and 4 is (a) regular Apprentices of three years' apprenticeship, (b) Helper Apprentices of two years' service of their apprenticeship, (c) Helper Apprentices of three years' experience as Electrician Helpers.]

"5. Regular helpers who have had four (4) or more years experience as helpers, may be promoted to positions as mechanics in their respective crafts.

* * * * *

"7. When mechanics become available they will be permitted to displace upgraded employees.

"8. When apprentices, helper apprentices, or helpers are promoted to positions of mechanics, they shall receive mechanics rate of pay. They shall be selected by the local management and the local committee of the Company, qualifications to govern."

Under paragraph 11 reductions in force were to be governed by the Memorandum of Agreement March 25, 1946, which provides paragraph 7:

7. "When it becomes necessary to reduce forces at any point, reduction will be made in the following order and in the manner described:

"* * * Electricians' Crafts

"(a) Borrowed men will be returned to their home point * * *.

"(b) Upgraded helpers.

"(c) Upgraded helper apprentices * * [with less than 580 days apprenticeship]

"(d) Upgraded helper apprentices * * [with more than 580 days apprenticeship]

"(e) Upgraded regular apprentices * * [less than 1160 days apprenticeship]

"Note I: Upgraded helpers will be demoted in the reverse order of their seniority dating on the helpers' seniority roster, provided the senior upgraded helpers are qualified to perform the work they stand to protect; where they are not qualified, they will be demoted and junior qualified upgraded helpers retained."

Electrician Helpers. Not only are Apprentices given a higher rank[8] in the general order, but provision is here alone made for Apprentices to advance into the "mechanic" (craft) status on the fulfillment of the time-training program of their apprenticeship and for which "upgraded" service is to count.[9]

So clearly provided for Apprentices and Apprentice Helpers working as upgraded mechanics, absence of similar language for upgraded Electrician Helpers, and the simultaneous presence of the plain words, "the men advanced will not lose their seniority as apprentices or helpers nor will they accumulate seniority as mechanics. * * *", demonstrates that under the collective bargaining agreements there was no automatic advance in status for upgraded Electrician Helpers.

This narrows it, then, even further. But Poore has no better success in attempting to establish that an Electrician Helper, upon completing the four years' practical experience, would advance to Electrician. All that was established, and as the Court found, was that the Electrician Helper with the highest seniority was usually given preference in bidding on vacancies on the Electricians' Roster. But it was equally uncontra-

dicted (and so found) that the Railroad does have the right (and frequently exercised[10] it) to select new Electricians as vacancies occurred from any suitable source and that in the actual day-to-day, practical operations and the customs and usages followed, there was no automatic right of succession, promotion or advancement.

 This practice was entirely free of any suggestion of discrimination against returning veterans and was, on the other hand, consistent with the approach reflected in so many ways in the basic contract, the Memorandum Agreements and in the operating practices to judge and determine competency on the basis of actual service performed. The position of Electrician was an important one requiring careful training and experience. The Railroad's training program itself reflected the importance of time, not in mere passage, but as the means of acquiring beneficial on-the-job experience and proficiency. The Act was not intended to give the veteran preference. It was intended to assure equality. Where, in technical and skilled employment, actual experience is an expressed requirement to advancement, the Act does not mean to give that effect to the mere passage of time. Alt-

---

8. E. g., Rule 135(a) of the basic contract allows 50% of Apprentices to be Electrician Helpers of two years' service and of specified age limits. Rule 135(b) gives the Electrician Helper selected under 135(a) as a Helper Apprentice an automatic increase of 2.4¢ per hour for each of the last five training periods (see note 6, supra). In the 1947 Agreement (note 7, supra), priority in obtaining upgraded assignments is on the basis of longest service of "their *apprenticeship*"; e. g., a Helper Apprentice (paragraph 3) with 2 years' apprenticeship outranks a Helper Apprentice of 3 years' experience as Electrician Helper, but with only 1 year's service of his apprenticeship.

9. 1947 Agreement, Paragraph 9: "Apprentices and helper apprentices promoted under the provisions of this agreement will be accredited for all time worked as mechanic in computing their service period as apprentices or helper apprentices. If such accredited time re-

sults in completing regular apprenticeship or helper apprenticeship period of training and the apprentice or helper apprentice is still employed as a mechanic, he will be included on seniority roster for mechanics in the respective craft with seniority dating as of date apprenticeship period is completed. Apprentices completing their apprenticeship while working under the provisions of this agreement will be furnished with duplicate of indenture of the company."

10. It is uncontradicted that laid off during the 1954 reductions in force there were 8 Electrician Helpers senior to Poore, many with seniority back as far as 1942; and, as shown note 3, supra, 7 Electricians were hired between March 1951 and the date of Poore's lay-off, only 2 of whom (W. L. Scott and Zuiderhoek were advanced as Apprentices) ever appear to have been in the Railroad's employ prior to the time each was hired. Of course, R. H. Newton was hired from the outside, see note 2, supra.

gens v. The Associated Press, 5 Cir., 188 F.2d 727; Harvey v. Braniff International Airways, 5 Cir., 164 F.2d 521; Addison v. Tennessee Coal, Iron & Railroad Co., 5 Cir., 204 F.2d 340; Special Service Co. v. Delaney, 5 Cir., 172 F.2d 16. And, whether military time is or is not to count as time served, where the entire employment arrangement shows, as here, that advancement to another, higher and different classification is on a selective basis by the employer with no automatic right of promotion regardless of time served, the Act does not guarantee such advancement to the veteran. Raulins v. Memphis Union Station Co., 6 Cir., 168 F.2d 466; Little v. Pennsylvania R. Co., D.C.Md., 95 F. Supp. 631; Boston & M. R. R. v. David, 1 Cir., 167 F.2d 722; Hewitt v. System Federation No. 152, 7 Cir., 161 F.2d 545; Lesher v. P. R. Mallory & Co., 7 Cir., 166 F.2d 983; Special Service Co. v. Delaney, supra; Addison v. Tennessee Coal, Iron & Railroad Co., supra.

On either analysis Poore failed to make his case. Poore's status when he left January 7, 1951, was an Electrician Helper with seniority as of June 28, 1948. At the time he left he was entitled to no more. When he returned February 25, 1952, even counting his military service, his time totalled only 635 days and he could make no other demand. When he was laid off in July 1954, he had had only 968 of the 1040 required days of actual experience to qualify. If, as seems quite likely, job proficiency required actual service on the job for the minimum period, he had failed to meet this. But even assuming that all military time was to count against the 1040 days as time worked, he yet remained an Electrician Helper with four years' experience. At most this made him eligible for *selection* as an Electrician, but until he was selected and approved as such by the Railroad, he remained an Electrician Helper. His right to compete for *selection* as an Electrician would have been exactly the same as though he had never left for military duty. In that situation his standing was identical with that of a non-veteran Electrician Helper of the same seniority. Neither could, by four years' experience or the passage of time or work in an upgraded capacity, compel the Railroad to class him as an Electrician. *Who* was to be selected, *where* he was to come from was for the Railroad to determine.

In this competition, Poore stood shoulder to shoulder with all Electrician Helpers of the same seniority. Giving the fullest voice to Oakley and Diehl, supra, that is all the Act means to give him. He can claim no more.

Affirmed.