240 F.2d 8
 Henry T. McKINNEY, Appellant,
v.
The MISSOURI-KANSAS-TEXAS RAILROAD COMPANY and Brotherhood
of Railway and Steamship Clerks, Freight Handlers,
Express and Station Employees, Appellees.
 No. 5436.
 United States Court of Appeals Tenth Circuit.
 Dec. 22, 1956.
 
 Alan S. Rosenthal, Washington, D.C. (George Cochran Doub, Asst. Atty. Gen., Frank D. McSherry, U.S. Atty, Muskogee, Okl., and Samuel D. Slade, Washington, D.C., on the brief), for appellant.
 Dan M. Welch, Oklahoma City, Okl., and Carroll J. Donahue, St. Louis, Mo. (Wayne R. Howell, St. Louis, Mo., M. E. Clinton, Dallas, Tex., Salkey & Jones, St. Louis, Mo., and Banker & Bonds, Muskogee, Okl., on the brief), for appellees.
 Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 Henry T. McKinney, an honorably discharged veteran, brought this action against the Missouri-Kansas-Texas Railroad Company to enforce alleged employment rights under § 9 of the Universal Military Training and Service Act of 1951, 50 U.S.C.A.Appendix, § 459. The Union was granted leave to intervene on its own motion. He appeals from the judgment of the Court dismissing his complaint on the grounds that it failed to state a claim upon which relief could be granted.
 
 
 2
 In his complaint McKinney alleged a collective bargaining agreement dated August 1, 1925, was still in effect, between M-K-T and the Union, of which he was a member; it was claimed that this agreement gave him rights for advancement upon his return from the service under the interpretation of the Act. The contract provides for three classes of employees, Groups 1, 2 and 3. Each Group has its own seniority schedule. At the time of his induction into the service McKinney was an employee of Group 2. Rule 15 of the contract provides that a worker returning after a leave of absence may return to his former position or exercise seniority rights to any position 'bulletined' during his absence. Rule 1(3)(A) provides that employees in Group 2 are entitled to promotions to Group 1 in preference over non-employees, 'based upon fitness and ability.' Rule 4 provides that upon such promotion seniority begins at the time the employee's pay starts in the respective class of service when employees are assigned to positions as provided for in Rule 10. It is by Rule 10 procedure that McKinney claims he is being denied his rights under the Act. There it is provided that vacancies will be bulletined in places easily accessible to employees and after applications are received the name of the successful applicant would be posted. Rules 1(3)(C) and 23 provide that within the respective Groups seniority might be exercised by employees whose jobs had been abolished. Grievances regarding rejection of seniority demands in that event were provided for by appeals.
 
 
 3
 On September 8 and 10, 1952, while McKinney was still in the service two positions in Group 1 were bulletined. The first was the position of bill clerk, given to R. B. Fabian on September 15, 1952, and the other was assistant cashier, given to G. B. McCuan on September 22, 1952. Both of these men were non-employees. Upon his discharge from the military on September 25, 1952, McKinney applied for re-employment and was rehired on October 2, 1952, as assistant cashier in Group 1, and was given G. B. McCuan's job.
 
 
 4
 It is McKinney's contention that when he returned he was entitled to exercise his seniority rights and place himself in the position of bill clerk, the position held by Fabian, in accordance with Rule 1(3)(A) of the contract. When he was given G. B. McCuan's position his seniority in Group 1 was dated as of October 7, 1952. He protested claiming that his seniority should be dated either September 8 or 10, 1952, when the vacancies were first bulletined. He continued to serve as assistant cashier, however, under the protested arrangement until the job was abolished on September 4, 1953. Thereupon he reasserted his contention that he deserved higher seniority than R. B. Fabian and sought to 'bump' him on that basis, and this was denied by M-K-T on the basis of his earlier assigned seniority date in Group 1. He was reassigned to his position in Group 2 held prior to his induction into the service and has held it since September 5, 1953.
 
 
 5
 The appellee Union challenges the jurisdiction of the district court on two grounds. It is urged that in any event the National railroad Adjustment Board was vested with primary exclusive jurisdiction[1] of the controversy between these parties; that appellant McKinney could not bypass the National Railroad Adjustment Board and seek relief in the federal district court. The Railway Labor Act[2] vests in the National Railroad Adjustment Board jurisdiction to interpret agreements and adjudicate issues between railroads and their employees. The National Railroad Adjustment Board is given broad jurisdiction to interpret agreements and adjudicate issues between railroads and their employees with appropriate and comprehensive administrative procedure provided for the discharge of such functions. But Section 9(d) of the Universal Military Training and Service Act, supra, expressly gives to any qualified and returning serviceman the right to institute a proceeding in the United States Courts to require a former employer to comply with the provisions of the Act regarding preservation of re-employment and seniority rights. The mandate of the statute is clear and it does not condition the right to institute and maintain such an action upon prior exhaustion of the administrative procedure under the Railway Labor Act. Inasmuch as this type of labor dispute is peculiar to veterans and the statute specifically applies to veterans as a class, prior exhaustion of administrative procedures under the Railway Labor Act is unnecessary. The Railway Labor Act is general legislation dealing with labor disputes as such. The Universal Military Training and Service Act is a specific statute for the benefit of all veterans honorably discharged and regards itself with disputes arising from such status upon their return. Being a specific statute for the resolution of specific grievances, it must control.
 
 
 6
 It is next contended by the Union that the Court lacked jurisdiction because of the absence of an indispensable party, Fabian. It is contended that Fabian's rights are involved in this controversy and that, therefore, he is indispensable to a final adjudication. The 1951 Act, however, specifically provides 'That only the employer shall be deemed a necessary party respondent to any such action.' Under this clear provision of the statute a controversy of this kind is solely between the returned veteran and the former employer and no one else need be joined as a party litigant.[3] The Union places strong reliance on the decision of our Court in Johnson v. Interstate Transit Lines, 10 Cir., 163 F.2d 125, 172 A.L.R. 1242. We did hold in that case that the other interested employees were indispensable parties. It is sufficient however to say that case is not controlling or in conflict with what we now hold, because it arises under the Act of 1940 which did not contain the provision of the 1951 Act quoted above or any similar provision.
 
 
 7
 On the merits we think the decision of the trial court is right. Section 9 of the Universal Military Training and Service Act merely guarantees the returning serviceman the seniority rights he would have had, had he not entered the service. It does not create or vest in a veteran additional rights beyond what he would have had, had he not gone into the service.[4] This is sometimes referred to as the escalator principle. It simply means that all of his rights including seniority move on as though he had not left the employ of the company.
 
 
 8
 To determine where he would be had he not entered the service and had he remained with the company, we then must look to the bargaining agreement. The veteran is not to be penalized by reason of military service.[5] The collective bargaining agreement classifies the employees into three Groups. Under the agreement the rights of the employees predicated upon seniority are expressly confined to members within each Group, with the further provision that employees in Group 2 have a qualified right to advance to Group 1 when a vacancy occurs. In such case they are given preference to such advancement over non-employee applicants for the vacant spot in Group 1. This right is conditioned however upon a determination that the employee seeking such advancement is fitted and qualified for such position. Had this vacancy occurred while McKinney was in the employ of the company, he would not have had the absolute right to demand either of these positions over the non-employee applicants. He could have demanded them only after a determination of fitness and qualification. The so-called escalator clause of the Act would carry forward only such established seniority rights as he had when he entered the service.
 
 
 9
 Under Rule 4 McKinney's seniority rights in Group 1 began when his pay started in that Group. His pay no doubt started on October 2, 1952, when he was rehired. It may be that his seniority in that Group began on that day rather than on October 7 when it was made to begin. It may also be that he was not entitled to 'bump' McCuan because it would seem that his seniority was junior to that of McCuan's. But this was not an issue in the case. It is apparent from what has been said that his seniority rights in Group 1 were in any event junior to those of Fabian and he was therefore not entitled to 'bump' him when his job in Group 1 was abolished. The conclusion we have reached on the main issue of the case makes unnecessary consideration of the question of laches.
 
 
 10
 Affirmed.
 
 
 
 [1]
 In Slocum v. Delaware, L. & W.R. Co., 339 U.S. 239, 70 S.Ct. 577, 580, 94 L.Ed. 795, in footnote 7 the Court states: 'Nor are we called upon to decide any question concerning judicial proceedings to review board action or inaction.'
 
 
 [2]
 48 Stat. 1185, 45 U.S.C.A. § 151 et seq
 
 
 [3]
 United States ex rel. Deavers v. Missouri-Kansas-Texas Railroad Co., 5 Cir., 171 F.2d 961; Conner v. Pennsylvania Railroad Company, 85 U.S.App.D.C. 223, 177 F.2d 854
 
 
 [4]
 Oakley v. Louisville & N.R. Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87; Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; Meehan v. National Supply Co., 10 Cir., 160 F.2d 346; Hewitt v. System Federation, 7 Cir., 161 F.2d 545
 
 
 [5]
 Trailmobile Company v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328