Jack H. BASSETT, Appellant,

v.

The TEXAS & PACIFIC RAILWAY COMPANY, and System Federation No. 121 of Railway Employees' Department, A.F. of L.–C.I.O., et al., Appellees.

No. 16465.

United States Court of Appeals
Fifth Circuit.

Aug. 18, 1958.

820

John C. Ford, Asst. U. S. Atty., Dallas, Tex., Samuel D. Slade, Bernard Cedarbaum, Attys. Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Heard L. Floore, U. S. Atty., Ft. Worth, Tex., for appellant.

J. Hart Willis, Hart Willis, Jr., Willis & Willis, Dallas, Tex., Mulholland, Robie & Hickey, Toledo, Ohio, for appellees, System Federation No. 121, etc., et al.

Robertson, Jackson, Payne, Lancaster & Walker, Dallas, Tex., Richard R. Lyman, Toledo, Ohio, Donald C. Fitch, Jr., Dallas, Tex., for appellee, Texas & Pac. R. Co.

Before RIVES and CAMERON, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

The appellant, Jack H. Bassett, is an honorably discharged veteran of the United States Army. He seeks to enforce employment rights under Section 9 of the Universal Military Training and Service Act of 1951, 50 U.S.C.A.Appendix, § 459. The applicable portion of this Act appears in the margin.[1] Upon oral argument of this case, this Court

---

1. "(a) Any person inducted into the armed forces under this title for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 4(b) shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. * * *

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

* * * * *

"(B) if such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; * * * unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

* * * * *

"(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." 50 U.S.C.A.Appendix, § 459.

issued an order on May 28, 1957, for the submission of supplemental briefs from both parties within twenty days after the decision of the Supreme Court in the pending case of McKinney v. Missouri-Kansas-Texas R. Co., 1956, 10 Cir., 240 F.2d 8, now affirmed on certiorari, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305. We then considered that the decision in the McKinney case would probably be dispositive of the case at bar and now we must so hold.

The facts of this case were submitted by stipulation to the court below and are restated briefly as follows. Bassett was employed by appellee railway as a carman apprentice on August 14, 1948, and continued in this category until February 8, 1952, when he left to enter the Army. He was re-employed by the railway on February 15, 1954, shortly after his discharge, and was given the same capacity or position as carman apprentice with seniority in that position as of August 14, 1948. On December 8, 1954, he completed the required four-year apprenticeship period and was promoted to carman with seniority as carman on that date.

Bassett sues to require the railway to antedate this seniority as carman to December 8, 1952, contending that he would have completed the required apprenticeship on approximately that date had it not been for the two years in the Army. The railway with the third-party defendants [2] defended this action on the ground that promotion from carman apprentice to carman was not automatic nor a contractual right, but rested upon the discretion of the railway company, making this promotion speculative; furthermore, the mere probability of promotion was not a seniority or employment status which would give an enforceable right under Section 9 of the Act. In this connection, the applicable stipulation of facts read:

"14. In employing carmen the defendant railway has and regularly exercised the right of selection among qualified applicants.

"15. Apprentice carmen and helper apprentice carmen * * * have no automatic right of succession, promotion or advancement to employment or seniority as carman on the defendant railway.

*   *   *   *   *   *

"18. Before an apprentice may pass from one period of his apprenticeship to the next he must complete a prescribed course of work to the satisfaction of certain railway officials, including an apprentice instructor. * * *.

*   *   *   *   *   *

"22. The defendant railway does not necessarily employ as carmen all of the apprentices who successfully complete their apprenticeships on the defendant railway.

"23. A carman helper who has completed 4 years experience doing carmen's work and possesses certain prescribed proficiencies is qualified for employment as a carman on the defendant railway. However, before he can be so employed he must relinquish in writing his seniority as carman helper.

"24. The labor agreement provides that when a qualified person has been employed as carman from any source (whether graduate apprentice, helper who has relinquished his helper's seniority, or carman from another point or railroad) his seniority as carman starts when his pay begins (i. e. the moment he actually begins work) on the job."

The veteran in the McKinney case contended substantially the same as Bassett here, that his seniority date in a higher

2. Upon motion of the railway, the union and 27 named carmen employees with seniorities predating that of Bassett were joined as third-party defendants for the purpose of a redetermination of their seniority dates should Bassett prevail. Some of these third-party defendants were veterans and some were not.

status or position should reflect the two years military service. Their position is substantially this: that the right under Section 9(c) (1) that a veteran is to be "restored without loss of seniority" must be construed with Section 9(c) (2) which declares that Congress intended restoration "in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." In other words, appellant says that "without loss of seniority" refers not only to seniority in the vacated position but also to seniority in any position which he probably would have obtained upon constant employment. Mr. Justice Frankfurter, in speaking for the Court in the McKinney case, 357 U.S. 265, 78 S.Ct. 1222, 1226, 2 L.Ed.2d 1305 clearly answered this proposition as follows:

"Section 9 of the Universal Military Training and Service Act, on which petitioner relies, requires that a returning veteran who has been separated from the service under the conditions set forth in the statute be restored by his employer to his former position or to a position of like seniority, status, and pay. He is not to be disadvantaged by serving his country. Section 9 (c) (1) states that he shall be restored 'without loss of seniority.' In Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284–285, [66 S.Ct. 1105, 1110–1111, 90 L.Ed. 1230] and Oakley v. Louisville & N. R. Co., 338 U.S. 278, 283, [70 S.Ct. 119, 122, 94 L.Ed. 87] the same provision in an earlier act was interpreted to mean that a returning veteran does not step back at the exact point he left his employment, but rather is entitled to 'a position which, on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position which he

would have held if he had remained continuously in his civilian employment.' 338 U.S. at page 283 [70 S. Ct. at page 122]. This interpretation is now embodied in § 9(c) (2) of the present Act.

"However, § 9(c) does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors. Much there is that might have flowed from experience, effort, or chance to which he cannot lay claim under the statute. Section 9(c) does not assure him that the past with all its possibilities of betterment will be recalled. Its very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment.

"Thus, on application for re-employment a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer. On his return from service, petitioner in the present case could not have demanded under the statute that respondent place him in any group 1 position. Promotion to a group 1 position from group 2, in which petitioner had formerly been employed, is not dependent simply on seniority. Under Rule 1 (3) (A) of the collective bargain-

ing agreement it is dependent on fitness and ability and the exercise of a discriminating managerial choice. Collective bargaining agreements that include such familiar provisions are presupposed by the statute, and it is in their context that it must be placed. See Aeronautical Industrial District Lodge 727 v. Campbell, 337 U.S. 521, 527 [69 S.Ct. 1287, 1290, 93 L.Ed. 1513]. Petitioner was not entitled to a group 1 position simply because in his absence it had been bulletined, and if he had then been employed he might have applied for it, and respondent might have found that he possessed the requisite fitness and ability. The statute does not envisage overriding an employer's discretionary choice by any such mandatory promotion. Nor does it sanction interfering with and disrupting the usual, carefully adjusted relations among the employees themselves regarding opportunities for advancement. * * *

"* * * Accordingly, we affirm the judgment, but with leave to petitioner to amend his complaint to allege, if such be the fact, that in actual practice under the collective bargaining agreement advancement from group 2 to group 1 is automatic."

Certainly, the McKinney case clearly decides the question of whether a veteran after re-employment is entitled to a retroactive seniority status upon a subsequent promotion where he had only a high probability of promotion had he not been in the service. Only where the promotion or advancement is *automatic* can the veteran claim his right. Whether or not the automatic feature of the promotion comes from an employment contract or from "actual practice" under a collective bargaining agreement or from another source does not concern us here since none of these was present.

The judgment is therefore

Affirmed.