Ernest O. JEFFERSON, Appellant,

v.

ATLANTIC COAST LINE RAILROAD
COMPANY et al., Appellees.

No. 18976.

United States Court of Appeals
Fifth Circuit.

June 6, 1962.

J. B. McGee, Jr., Waycross, Ga., for appellant.

Larry E. Pedrick, Waycross, Ga., Harold C. Heiss, Russell B. Day, Cleveland, Ohio, George D. Busbee, Albany, Ga., Shelby Myrick, Savannah, Ga., John H. Ritter, Cleveland, Ohio, for appellees.

Before BROWN, GEWIN and BELL, Circuit Judges.

GEWIN, Circuit Judge.

The appellant, Ernest O. Jefferson, complains of the judgment of the District Court for the Southern District of Georgia denying relief to which he claims he is entitled against Atlantic Coast Line Railroad under the provisions of the Universal Military Training and Service Act of 1951, 50 U.S.C.A.Appendix, § 459.[1] The Brotherhood of Locomotive

1. "(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of susbection (b) [of this section] should be so restored in such manner as to give

Engineers (BLE) and the Brotherhood of Locomotive Firemen and Engineers (BLF&E) were permitted to intervene as defendants. The case was tried by the court without a jury.

So far as pertinent to our decision, the facts may be stated as follows: Jefferson was employed as a locomotive fireman by the Railroad from January 28, 1942, until June 10, 1942, when he entered the military service. After honorable discharge, he was re-employed by the Railroad on November 21, 1945, as a locomotive fireman and was placed on the Firemen's Seniority Roster with the same seniority he would have had if he had remained continuously in the employ of the railroad from January 28, 1942. At the time he left for the army, he had accumulated approximately 12,000 miles; and after returning, this accumulation rose to 30,-000 miles by November 13, 1946.[2]

Jefferson passed the first examination on June 18, 1947. He completed firing 60,000 miles in August 1947, and took the second examination on March 19, 1949 and failed; but he retook the second examination and passed it on October 20, 1949. He completed firing 90,000 miles on April 28, 1950, and thus became eligible to take the third examination. He was given an opportunity to take the third examination on July 21, 1950, but declined to do so; stating he was not prepared. This refusal was counted as a failure, which fact was known to Jefferson. He took the third examination on December 10, 1951 and failed.

Under the rules, this constituted a second failure. He finally took the third examination again on June 12, 1952, and passed it with an exceptional rating. Thereafter, according to the rules, he was required to review the physical characteristics of the railroad and pass an examination relating to transportation train rules. He successfully passed this final test and made his first run as an engineer on September 10, 1952. His seniority date was ultimately determined to be January 27, 1951, a fictitious date fixed by standard practice to close the roster. Jefferson required over six years after returning from military service before he passed the required examinations. During this period, 21 firemen who were junior to Jefferson on the Firemen's Roster had successfully passed all examinations and had made a first run as engineer and were finally placed ahead of Jefferson on the Engineer's Seniority Roster. Seven of these twenty-one men were veterans. Jefferson served as a combat locomotive fireman and engineer during his military service.

When he finally passed the third examination, as above noted, he made a brilliant score. The duties of senior fireman are often preferred to those of junior engineer, but most firemen have the ambition to become an engineer ultimately. There is some evidence in the record to indicate that Jefferson purposely delayed the final passage of his examinations in order to retain his position as senior fireman, but it is not necessary for us to

him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

2. The Railroad and the Brotherhoods had a contract at all times here material which required certain examinations to be taken by firemen before they could assume the duties of a locomotive engineer. The first exam is given after the fireman has accumulated 30,000 miles and the second after he has accumulated 60,000 miles as fireman. These examinations are calculated to test the proficiency of the em-

ployee in the performance of duties as fireman, his responsibility to the engineer and to some extent his knowledge of locomotive equipment. The third examination cannot be taken until the employee has accumulated 90,000 miles as fireman; and this examination is promotional in the sense that it is designed to determine whether a fireman is qualified to be an engineer. The third examination is more detailed than the other two and requires extensive knowledge as to machinery, air brakes, electrical equipment and the operation of the locomotive as an engineer. If a fireman fails any one of these examinations three times, he must be removed from service.

pass upon the motives or reasons which prompted the delay. There was unusual delay.

Jefferson's name was initially placed on the Engineer's Roster in the same position he occupied on the Firemen's Roster, but without a seniority date. It remained in that position from September 10, 1952, until January 13, 1954. On January 13, 1954, the Railroad prepared and issued a seniority roster effective July 1, 1953, which resulted in dropping Jefferson's name 22 places.[3] On March 30, 1953, a Memorandum of Understanding was approved by the Railroad and the Brotherhoods which set forth the interpretation of the seniority rule and it was made effective as of July 1, 1951. That date was chosen because certain protests with reference to the seniority roster were filed. Both the Railroad and the Brotherhoods maintain that Jefferson was finally given his proper place and date on the Engineer's Seniority Roster.

Jefferson contends that the Memorandum of Understanding constituted a new rule which adversely affected him retroactively. The Railroad and the Brotherhoods claim that the Memorandum was simply a means of placing before the Firemen's Local Chairmen a simple and understandable explanation of prior interpretations of the promotional rules and that no changes were actually made.

There are other facts in the record which are interesting and illustrate the working of the contract[4] between the Railroad and the Brotherhoods, but we believe the statement of facts set forth is sufficient to an understanding of this case.

We agree with the contention of the Railroad and the Brotherhoods that the Memorandum of Understanding was not a new interpretation of the promotional rules, and that it made no material changes therein; but served to give a better and clearer explanation of the in-

3. In addition to the 21 who passed the exams before Jefferson, there was another, C. Brady (also a veteran), who was placed on the final roster ahead of Jefferson. Brady acted diligently in taking his examinations, but was prevented from completing the final examination due to illness. In accordance with the Collective Agreement, his name was advanced ahead of Jefferson, although he passed the final examination after Jefferson, because his delay had resulted from illness.

4. Pertinent provisions of the contracts between the Brotherhoods and the Railroad are as follows:

Article 26, § (c), ¶ 7 between the BLF&E and the Railroad:

"7. Firemen having successfully passed qualifying examination shall be eligible as engineers. Promotion and the establishment of a date of seniority as engineer, as provided herein, shall date from the first service as engineer when called for such service, provided there are no demoted engineers back firing."

Article 26, § (c), ¶ 2 of the Firemen's Collective Agreement:

"Firemen shall be examined for promotion according to seniority on the fireman's roster, and those passing the required examination shall be given certificate of qualification, and when promoted shall hold their same relative standing in the service to which assigned."

Paragraphs 3 and 5 of the promotion rules provide as follows:

"3. If for any reason the senior eligible fireman or engineer to be hired is not available, and junior qualified fireman is promoted and used in actual service out of his turn, whatever standing the junior fireman so used establishes, shall go to the credit of the senior eligible fireman or engineer to be hired, provided the engineer to be hired is available and qualifies within thirty days. As soon as the senior fireman or engineer to be hired is available, as provided herein, he shall displace the junior fireman, who shall drop back into whatever place he would have held had the senior fireman, to be promoted or engineer to be hired been available and the junior fireman not used.

"Note: Qualification, as referred to herein, is not intended to include learning of road or signals.

"5. No fireman shall be deprived of his rights to examination, nor to promotion in accordance with his relative standing on the firemans' roster, because of any failure to take examination by reason of the requirements of the railroad service, by sickness or by other proper leave of absence; provided, that upon his return he shall be immediately called and required to take examination and accept proper assignment."

terpretations and decisions in effect prior thereto. We also agree that the position finally given to Jefferson on the Engineer's Roster is the correct one as contended by the Brotherhoods and the Railroad, but neither of these conclusions is controlling or decisive in this case. The controlling question here is whether, there has been discrimination against Jefferson or whether he has been improperly disadvantaged by serving his country in the military. We conclude that the trial court reached the correct conclusion.

■■■ Jefferson relies strongly on the holding in Fishgold v. Sullivan Dry Dock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946) which contains the following statement with reference to veterans:

"Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war."

Thus contends Jefferson, he should be placed on the Engineer's Seniority Roster in the same position he would have occupied if he had never entered the military service and had passed all examinations and qualified. Substantially the same question was before this Court in Bassett v. Texas & Pacific Railway Co., 258 F.2d 819, 5 Cir. (1958). The decision in the Bassett case was delayed pending the decision of the Supreme Court in the case of McKinney v. Missouri-Kansas-Texas R. Co., 240 F.2d 8, 10 Cir. (1956), which was affirmed on certiorari, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305. In the McKinney case, Mr. Justice Frankfurter clearly explained that the Fishgold decision " * * * does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors. Much there is that might have flowed from experience, effort, or chance to which he cannot lay claim under the statute." The decision further points

out that the statute manifests no purpose to assure the veteran a position he could not have attained as a matter of right. He is not entitled to demand assignment to a position higher than that he formerly occupied, when promotion to such higher position depends, not simply on seniority or some other form of automatic progression, but on other factors including experience, effort and qualifications. In this case, the job sought by Jefferson did not depend on automatic progression, but is more dependent on fitness, ability, diligence and his successful passage of the qualifying examinations and tests.

Satisfactory passage of three examinations was required of Jefferson, and all other locomotive firemen before they could qualify as a locomotive engineer. In no circumstances was his advancement from fireman to engineer automatic. As concluded by this Court in the Bassett case:

"Certainly, the McKinney case clearly decides the question of whether a veteran after re-employment is entitled to a retroactive seniority status upon a subsequent promotion where he had only a high probability of promotion had he not been in the service. *Only where the promotion or advancement is automatic can the veteran claim his right.*" (Emphasis supplied.)

Jefferson seeks to circumvent the McKinney case and other decisions by asserting that the Railroad had no discretion in promoting firemen under the terms of the Collective Bargaining Agreement which provided that failure to pass any of the three progressive examinations would result in the termination of his service. We cannot agree with his contention. The examinations are designed to test qualifications, skill and ability. Mere length of service is not sufficient. The operation of a railway locomotive as its engineer is a responsible assignment which requires experience, skill, training and certain definite qualifications. We find no improper discrimination against Jefferson. Trail-

mobile Co. v. Whirls, 331 U.S. 40, 67 S. Ct. 982, 91 L.Ed. 1328 (1947); Oakley v. Louisville & N. R. R. Co. (1949) 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87; Addison v. Tennessee Coal, Iron & R. R. Co., 204 F.2d 340, 5 Cir. (1953).

The judgment is

Affirmed.