Darrel D. McARTHUR and Gary J. Doolin, Plaintiffs,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, a corporation, Defendant.

No. S–Civ–73–168.

United States District Court, S. D. Illinois S. D.

Dec. 2, 1975.

Donald B. Mackay, U.S.Atty., Springfield, Ill., Victor M. Pilolla, U.S.Atty., Herman Grant, Regional Sol., U.S. Dept. of Labor, Chicago, Ill., for plaintiffs.

Alfred F. Newkirk, Giffin, Winning, Lindner, Newkirk, Cohen, Bodewes & Narmont, Springfield, Ill., Martin M. Lucente, Sidley & Austin, Chicago, Ill., for defendant.

## ORDER

HARLINGTON WOOD, Jr., District Judge.

Plaintiffs, Darrel D. McArthur and Gary J. Doolin, bring this action against Defendant, Norfolk and Western Railway Co., for restoration of lost seniority, status and pay suffered by reason of Defendant's violation of the provision of § 9 of the Military Selective Service Act, as amended 50 U.S.C. App. § 459. Prior to entry into the Armed Services of the United States, Plaintiffs were both fireman-helpers in the employ of Defendant. After completion of their military service, Plaintiffs returned to their former occupation of fireman-helper with Defendant. Plaintiffs then satisfied requirements for advancement and qualified as engineers. Plaintiffs in this action contest engineer seniority dates assigned to them by Defendant.

Promotion to the position of engineer is governed by Rule 30, "Promotion and Rights," of the collective bargaining agreement governing fireman-helpers as supplemented by a "Memorandum of Agreement". Rule 30 as supplemented provides that within 60 days after competion of three years of actual service as a fireman-helper (plus 60,000 miles in freight service, not less than 40,000 miles of which have been in road service), all fireman-helpers are required to be examined according to seniority on the fireman-helpers' roster for the position of engineer. In order to complete the examination process, an applicant must successfully pass two tests. The applicant must first pass a mechanical examination. If he fails, the applicant may retake the mechanical test in six months. If the applicant fails the mechanical test on his second attempt, declines to take the test, or fails to report for his examination, he is dismissed by the company. After the applicant successfully passes the mechanical test, he then must take a second test on time tables and a book of rules. If the applicant fails to pass, he can retake the test within 30 to 60 days. If the applicant fails on his second try, declines to take the test, or fails to report for his examination, he is dismissed by the company. Fireman-helpers who have successfully passed both qualifying examinations are eligible to become engineers. The seniority date as engineer generally runs from the first day of service as engineer. The first day of service as an engineer is the date one is first assigned as engineer on a regular run, pool turn, yard job, or on the engineer's extra board.

Plaintiff, McArthur, was first employed as a fireman-helper by Defendant on June 23, 1966. On October 25, 1966, McArthur was inducted into the Armed Forces of the United States. On September 25, 1968, McArthur was honorably discharged from the military. McArthur was re-employed by Defendant on October 17, 1968.

Plaintiff, Doolin, was first employed by Defendant on June 11, 1966, as a fireman-helper. On May 13, 1967, Doolin was inducted into the Armed Forces of the United States. Doolin received an honorable discharge on May 18, 1969, and was re-employed by Defendant on June 2, 1969.

On October 11, 1971, both Plaintiffs completed three years of actual service as fireman-helpers. On November 15, 1971, both Plaintiffs passed the mechan-

ical examination on the first try. On January 19, 1972, both Plaintiffs on their second attempt passed the examination on the time table and table of rules. McArthur was given March 29, 1972, as an engineer seniority date. Doolin was given March 24, 1972 as a seniority date.

Plaintiffs argue that if they had continued in Defendant's employ and not entered military service, they would both have established seniority as engineers on July 15, 1970.

Defendant filed a Motion for Summary Judgment arguing that promotion from fireman-helper to engineer is not a matter of automatic progression but is dependent on fitness, ability, diligence and the successful passage of the qualifying examinations. In support of this position, Defendant asserts that 40 percent of all fireman-helpers fail to complete the three-year training period. Defendant relies on *McKinney v. Missouri-Kansas-Texas R. R. Co.*, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958), and on *Jefferson v. Atlantic Coast Line Railroad Co.*, 303 F.2d 522 (5th Cir. 1962) in support of its assertion that Plaintiffs have been given a proper seniority date.

Plaintiffs have filed a Motion for Partial Summary Judgment on the issue of liability. Plaintiffs assert that progression from fireman-helper to engineer is automatic. Plaintiffs argue that a veteran has the benefit of a presumption that he would have remained in the employment of Defendant and would have performed satisfactorily for the three-year training period. Thus, Plaintiffs argue that the fact that 40 percent of fireman-helpers fail to pass the three-year training period is irrelevant. Instead, Plaintiff cites as the controlling statistic the fact that 99 percent of those who complete the three-year training period and take the two examinations pass and are appointed as engineers.

For the following reasons, this Court finds that Plaintiffs' Motion for Partial

Summary Judgment on the issue of liability should be granted and that Defendant's Motion should be denied.

Plaintiffs' claim rests upon § 9(b) and 9(c) of the Universal Military Training and Service Act, 50 U.S.C. App. § 459(b) and (c). Section 459(b) and (c) provide in part that if a person leaves a civilian position to perform military service and, thereafter, as a veteran, makes timely application for re-employment, they will be restored to their former position without loss of seniority, status or pay. Section 459(c)(2) provides:

> (2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

Section 459(c)(2) incorporates into the Act "the escalator principle" first announced in *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). In *Fishgold,* the Court stated that the re-employed veteran:

> . . . does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war. *Fishgold* at 284–85, 66 S.Ct. at (1111).

See also *Tilton v. Missouri Pacific R. R. Co.*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964). The language of the Act manifests a continuing "desire on the part of Congress to provide as nearly as possible that persons called to serve their country in the armed forces should, upon returning to work in civilian life, resume their old employment

without any loss because of their service to their country." *Accardi v. Pennsylvania R.R. Co.*, 383 U.S. 225, 228, 86 S.Ct. 768, 771, 15 L.Ed.2d 717 (1966).

In the present case, Defendant claims that advancement is not automatic but is dependent on fitness, ability, diligence and passage of qualifying examinations. Defendant relies primarily on *McKinney v. Missouri-Kansas-Texas R.R. Co.*, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958), for the proposition that Plaintiffs here are not entitled to retroactive seniority status since their promotion or advancement was not automatic. On the other hand, Plaintiffs argue that their promotion was "automatic" and "dependent essentially upon continuing employment" within the meaning of *Tilton v. Missouri Pacific R. R. Co.*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964).

In *McKinney*, pursuant to a collective bargaining agreement, employees were divided into three groups according to the functions they performed, with seniority defined in each group. Employees were entitled to bid on vacancies as they arose. The collective bargaining agreement also provided that employees in group 2 were to be given preference over non-employees in assignment to positions in group 1. McKinney was employed in a group 2 position when he left for the Army. When McKinney returned, he was placed in a group 1 job with seniority running from the date of re-employment. The Court rejected McKinney's contention that he was entitled to an earlier seniority date based on the fact that he could have applied for available group 1 positions earlier had he not been in the military. The Court first stated that § 459(c) does not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors:

> Much there is that might have flowed from experience, effort, or chance to which he cannot lay claim under the statute. Section 9(c) does not assure him that the past with all

its possibilities of betterment will be recalled. Its very important but limited purpose is to assure that those changes and advancements in status that would necessarily have occurred simply by virtue of continued employment will not be denied the veteran because of his absence in the military service. The statute manifests no purpose to give to the veteran a status that he could not have attained as of right, within the system of his employment, even if he had not been inducted into the Armed Forces but continued in his civilian employment. *McKinney*, 357 U.S. at 271–272, 78 S. Ct. at 1226.

Since promotion was dependent on fitness and ability and the exercise of managerial choice, McKinney was held not to be entitled to the earlier seniority. "The statute does not envisage overriding an employer's discretionary choice by any such mandatory promotion." *McKinney*, 357 U.S. at 272, 78 S. Ct. at 1227. It is important to note, however, that the Court remanded and granted McKinney leave to amend his Complaint to allege that by custom and practice under the collective bargaining agreement advancement from group 2 to group 1 was in fact automatic.

In *Tilton v. Missouri Pac. R. R. Co.*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590, (1964), Petitioner Tilton was a "provisional carman" when he was called to military service. Under the collective bargaining agreement, he was not entitled to journeyman seniority until he had completed 1,040 days of actual work in the provisional status. After his return from the military, Tilton completed the 1,040 day requirement by working an additional 895 days. He was given journeyman seniority status only from the day he actually completed the provisional period. The Court ruled that promotion was automatic and that Tilton was entitled to a seniority date reflecting delay in advancement caused by military service. The Court distinguished *McKinney* as being a case where promo-

tion was dependent primarily upon managerial discretion. The Court stated that once a re-employed veteran completes his interrupted training he is entitled to a retroactive seniority status if:

. . . as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur. *Tilton,* 376 U.S. at 181–182, 84 S. Ct. at 602.

In *Pomrening v. United Air Lines,* 448 F.2d 609 (7th Cir. 1971), the Court considered the alternate approaches embodied in the *McKinney* and *Tilton* decisions. Following a screening process, Pomrening was hired by United Air Lines and assigned to Flight Officer Training Class. United gave Pomrening pilot seniority from the date that he actually completed the Officer Training class. The Court rejected United's argument that Pomrening was not entitled to retroactive seniority since his advancement was dependent on a program filled with tests and evaluation. United's power to fire those failing to meet required standards was not "managerial discretion" within the meaning of *McKinney:*

. . . it would appear that the "employer discretion" found critical in *McKinney* is the employer's discretionary choice to select some employees for advancement, promotion or transfer while passing over others. Where such discretion exists, the returning veteran may not invoke the Act to "overrid[e] an employer's discretionary choice. * * * *" *McKinney, supra,* 357 U.S. at 272, 78 S. Ct. 1222, 2 L.Ed.2d 1305.

However, where the discretion is of the type inherent in virtually every training program, the reemployed veteran is, upon qualification, entitled to claim the seniority status which he would have acquired, but for his military service, by the earlier completion of the training program. Such discretion would include, as a minimum, an

employer's discretion to determine whether an individual employee is performing sufficiently well to warrant his advancement in the normal course to a position or status awarded to all those who continue their employment and successfully complete a probationary or training period. *Pomrening,* 448 F.2d at 613.

Thus, the Court applied a two step test indicated by *Tilton:*

Thus, under *Tilton's* test, Pomrening will be entitled to the seniority status he claims if two factors are present. First, it must appear, as a matter of foresight, that pilot trainees who successfully completed United's training course were regularly advanced to flight officer status. Second, it must appear, as a matter of hindsight, that Pomrening would have probably completed his training in the normal course had it not been interrupted by his military service. *Pomrening,* 448 F.2d at 613.

Despite the intricacies of the training program and the rigorous standards and tests which must be satisfied, the Court concluded that as a matter of foresight the pilot trainees who successfully completed United's training course were regularly advanced to flight officer status. The Court also noted that "the foreseeability of automatic promotion of successful provisional employees may be based upon the regularity of the employer's actual practice even where there is no express contractual right to such promotion." *Pomrening,* 448 F.2d at 614 ft. n. 1. In addition, United's argument that it was not predictable that Pomrening would have successfully completed the program was held to be irrelevant:

United argues at length that it was not predictable that Pomrening would have successfully completed the program. There are two answers to this. First, as we understand *Diehl, Tilton* and *Brooks,* this fact is irrelevant. We agree with the Fourth Circuit's conclusion that *Tilton* means that "if as a matter of course a company as-

signs seniority to an employee who satisfactorily completes his training, a veteran similarly situated * * * is entitled to the seniority he would have attained had his training not been interrupted by military service * * *. [F]or purposes of the Act an employer's discretion is exhausted by selection of an employee for training in those situations where promotion for a successful trainee is automatic." *Collins v. Weirton Steel Co.*, 398 F.2d 305, 309 (4th Cir. 1968).

In *Diehl, Tilton* and *Brooks*, the Court was not concerned with the likelihood that the veteran would have completed the training, but only with the likelihood that he would have been advanced *if he did successfully complete it. Pomrening*, 448 F.2d at 614.

The Court went on to find that the second facet of the *Tilton* test was satisfied —that Pomrening did in fact upon his return complete the program and obtain pilot seniority status so as to support the hindsight assumption that he would have done so earlier but for the interruption caused by his military service.

In the present case, Defendant does not possess "employer discretion" within *McKinney* since the employer does not exercise a discretionary choice to select some employees for advancement, promotion, or transfer while passing over others. On the contrary, the discretion exercised by Defendant through its power to dismiss fireman-helpers either during the three-year training period or as a result of failure to pass the two step examination process is discretion inherent in every training program:

> Such discretion would include, as a minimum, an employer's discretion to determine whether an individual employee is performing sufficiently well to warrant his advancement in the normal course to a position or status awarded to all those who continue their employment and successfully complete a probationary or training period. *Pomrening*, 448 F.2d at 613.

Thus, the two step *Tilton* test governs whether Plaintiffs are entitled to retroactive seniority:

> . . . Congress intended a reemployed veteran who, upon returning from military service, satisfactorily completes his interrupted training, to enjoy the seniority status which he would have acquired by virtue of continued employment but for his absence in military service. This requirement is met if, as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur. *Tilton*, 376 U.S. at 181, 84 S.Ct. at 602.

Defendant argues that it was not reasonably foreseeable that Plaintiffs would have completed the three-year training program. However, the likelihood that the Plaintiffs would have completed the three-year training program is irrelevant. On the contrary, the relevant consideration is whether it was reasonably foreseeable that Plaintiffs would have been advanced on completion of the training period. *Pomrening*, 448 F.2d at 614. The Supreme Court has stated:

> . . . As Benjamin Franklin observed, "In this world nothing is certain but death and taxes." In every veteran seniority case the possibility exists that work of the particular type might not have been available; *that the veteran would not have worked satisfactorily during the period of his absence;* that he might not have elected to accept the higher position; or that sickness might have prevented him from continuing his employment. In the light of the purpose and history of this statute, however, we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights. *Tilton v. Missouri Pacific R. R. Co.*, 376 U.S. 169, 180–181, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964). (Emphasis added.)

Since 99 percent of those fireman-helpers who complete the three-year training period pass both examinations

**164**

and are promoted to engineer, as a matter of foresight it was reasonably certain that advancement would have occurred. In addition, as a matter of hindsight Plaintiffs completed the training program and advancement did in fact occur.

Defendant argues that *Tilton* and *Pomrening* are not controlling since the employees involved in those cases had already been selected for promotion prior to entry in the armed forces. However, in *Witty v. Louisville & Nashville R.R. Co.*, 342 F.2d 614, 617 (7th Cir. 1965) the Court stated that the "escalator principle" incorporated into § 9(c)(2) governs "whether the advancement is before induction into military service as in *Tilton*, or after induction . . ."

*Witty*, 342 F.2d at 617.

The Court is aware of *Jefferson v. Atlantic Coast Line R.R.*, 303 F.2d 522 (5th Cir. 1962) but does not consider it to be controlling.

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment on the issue of liability is granted. Defendant's Motion for Summary Judgment is denied. A factual issue as to whether July 15, 1970, is the proper date from which seniority is to be measured remains for determination. In addition, questions as to the amount of lost wages and benefits to which Plaintiffs are entitled remain.